# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INDUSTRIA DEL HIERRO, S.A. DE C.V.<br><br>Petitioner,<br><br>v.<br><br>UOP LLC AND HONEYWELL INTERNATIONAL, INC.<br><br>Respondents. | Case No. |

## PETITION TO VACATE THE ARBITRATION AWARD

Daniel E. González
HOGAN LOVELLS US LLP
600 Brickell Avenue Suite 2700
Miami, FL 33131
(305) 459-6500
daniel.gonzalez@hoganlovells.com

Samuel L. Zimmerman
Brett Weinstein
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000
samuel.zimmerman@hoganlovells.com
brett.weinstein@hoganlovells.com

Brandon K. Black
JONES WALKER LLP
445 North Blvd, Ste 800
Baton Rouge, LA 70802
(225) 248-2128
bblack@joneswalker.com

Richard J. Tyler, FCIArb
JONES WALKER LLP
201 St. Charles Ave., 49th Floor
New Orleans, LA 70170-5100
(504) 582-8266
rtyler@joneswalker.com

Chad V. Theriot
JONES WALKER LLP
3455 Peachtree Rd. NE, Ste 1400
Atlanta, GA 30326
(404) 870-7515
ctheriot@joneswalker.com

*Counsel for Petitioner, Industria del Hierro, S.A. de C.V.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

PARTIES ............................................................................................................. 4

JURISDICTION AND VENUE .............................................................................. 4

FACTUAL BACKGROUND .................................................................................. 5

    A.    The Dispute ............................................................................................. 5

    B.    The Arbitration ........................................................................................ 7

            1.    Commencement of the Arbitration and Procedural Framework .......... 7

            2.    The Arbitration Hearing ................................................................. 8

            3.    Award Timeliness Issues ............................................................... 9

    C.    The Tribunal's Award ............................................................................ 10

    D.    Correction and Review of the Award ...................................................... 11

MEMORANDUM OF LAW ................................................................................. 13

    A.    The Tribunal Exceeded Its Powers by Issuing an Untimely Award ............... 13

            1.    The Tribunal's Untimely Award Violates the Jurisdictional Time Limit Set Forth in the Arbitration Agreement ......................................... 14

            2.    The ICC's Repeated Extensions of the Time Limit to Render the Award Were Irrelevant and, in Any Event, Unauthorized and Invalid .......... 16

    B.    The Tribunal Exceeded its Authority by Failing to Finally Determine the Issues Submitted to Arbitration ................................................................. 19

            1.    The Arbitration Agreement Required the Final Determination of All Issues Submitted, Which the Tribunal Ignored ................................ 20

            2.    The Contingent Award Violates the FAA's Finality Requirement ...... 22

    C.    The Tribunal Exceeded Its Powers by Issuing an Unreasoned Award ........... 24

            1.    The Tribunal Failed to Explain the Untimely Issuance of the Award . 26

            2.    The Tribunal Failed to Justify the Contingent Damages Award ......... 26

             3.    The Tribunal Failed to Justify Its Unilateral Decision to Attempt to Modify the Juridical Seat of the Arbitration ................................... 28

            4.    The Tribunal Failed to Provide a Reasoned Basis for the Award of Attorneys' Fees and Costs ............................................................ 29

D.    The Tribunal Engaged in Misconduct and Unfair Treatment Causing Prejudice to Industria ................................................................................................... 31

    1.    The Tribunal Impermissibly Admitted UOP's Untimely Claims and Evidence in Violation of Industria's Due Process Rights .................... 32

    2.    The Tribunal Selectively and Inequitably Applied Procedural Rules to Industria's Detriment .......................................................................... 34

    3.    The Tribunal's Misconduct in Applying Texas Procedural Law Resulted in an Unfair Award of Attorneys' Fees and Costs ............................... 35

CONCLUSION ..................................................................................................... 39

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Absolute Nev., LLC v. Grand Majestic Riverboat Co., LLC*,
   646 F. Supp. 3d 426 (S.D.N.Y. 2022)...................................................................................4

*Arthur Andersen & Co. v. Perry Equip. Corp.*,
   945 S.W.2d 812 (Tex. 1997)...............................................................................................37

*Banco de Seguros del Estado v. Mut. Marine Off., Inc.*,
   344 F.3d 255 (2d Cir. 2003)................................................................................................13

*Bell Aerospace Co. Div. of Textron, Inc. v. Local 516, Int'l. Union, United
   Auto., Aerospace & Agric. Implement Workers of Am. (UAW)*,
   500 F.2d 921 (2d Cir. 1974)....................................................................................... 19, 24

*Briscoe Protective, LLC v. N. Fork Surgery Ctr., LLC*,
   188 N.Y.S.3d 113 (2d Dep't 2023).....................................................................................36

*Citizens Bank, N.A. v. Magleby*,
   No. 24-cv-4827, 2025 WL 33430 (S.D.N.Y. Jan. 6, 2025)................................................29

*Dolan v. ARC Mech. Corp.*,
   No. 11-cv-09691, 2012 WL 4928908 (S.D.N.Y. Oct. 17, 2012).......................................32

*Fairchild Corp. v. Alcoa, Inc.*,
   510 F. Supp. 2d 280 (S.D.N.Y. 2007).................................................................................35

*Gas Aggregation Servs., Inc. v. Howard Avista Energy, LLC*,
   319 F.3d 1060 (8th Cir. 2003) ............................................................................................22

*Gen. Re Life Corp. v. Am. Gen. Life Ins. Co.*,
   No. 24-cv-2089, 2024 WL 3043084 (S.D.N.Y. June 18, 2024) ..........................................5

*Grinnell Hous. Dev. Fund Corp. v. Local 32B-32J, Serv. Emp. Int'l Union*,
   767 F. Supp. 63 (S.D.N.Y. 1991) .......................................................................................18

*Hagshama Manhattan 10 Gold, LLC v. Strulovitz*,
   No. 20-cv-04839, 2021 WL 1178028 (S.D.N.Y. Mar. 28, 2021)...............................27, 29

*Hasbro, Inc. v. Catalyst USA, Inc.*,
   367 F.3d 689 (7th Cir. 2004) ..............................................................................................14

*HDI Glob. SE v. Phillips 66 Co.*,
   No. 22-cv-807, 2022 WL 3700153 (S.D.N.Y. Aug. 26, 2022)..........................................22

*Hill v. Norfolk & W. Ry. Co.*,
   814 F.2d 1192 (7th Cir. 1987) ............................................................................................19

*Huntington Alloys, Inc. v. United Steelworkers of Am.*,
623 F.2d 335 (4th Cir. 1980) ............................................................. 16

*In re Andrews v. Cnty. of Rockland*,
992 N.Y.S.2d 131 (2d Dep't, 2014) ..................................................... 24

*In re Arb. No. AAA13-16109511085 Under Grain Arb. Rules*,
867 F.2d 130 (2d Cir. 1989) ............................................................... 14

*In re Freeman's Est.*,
34 N.Y.2d 1 (1974) ........................................................................... 36

*In re Tempo Shain Corp. v. Bertek, Inc.*,
120 F.3d 16 (2d Cir. 1997) ................................................................. 31

*InterChem Asia 2000 PTE Ltd. v. Oceana Petrochemicals AG*,
373 F. Supp. 2d 340 (S.D.N.Y 2005) ................................................... 21

*Jones v. St. Louis-S.F. Ry. Co.*,
728 F.2d 257 (6th Cir. 1984) .............................................................. 14

*Katz v. Feinberg*,
167 F. Supp. 2d 556 (S.D. NY 2001), *aff'd* 209 F. 3d 95 (2d Cir. 2002) ......... 13

*Kenford Co. v. Erie Cnty.*,
493 N.E.2d 234 (N.Y. 1986) ............................................................... 27

*La Vale Plaza, Inc. v. R. S. Noonan, Inc*.,
378 F.2d 569 (3d Cir. 1967) ............................................................... 23

*Lawrence v. Miller*,
901 N.E.2d 1268 (N.Y. 2008) ............................................................. 37

*Leeward Constr. Co., Ltd. v. Am. Univ. of Antigua–College of Med*.,
826 F.3d 634 (2d Cir. 2016) .......................................................... 25, 30

*Metallgesellschaft A.G. v. M/V Capitan Constante*,
790 F.2d 280 (2d Cir. 1986) ............................................................... 23

*MSG Arena, LLC v. Int'l Bhd. of Elec. Workers Loc. 3*,
No. 18-cv-11626, 2019 WL 13246788 (S.D.N.Y. May 14, 2019) ............ 14, 16

*Norfolk S. Ry. Co. v. Sprint Commc'ns Co.*,
883 F.3d 417 (4th Cir. 2018) ........................................................ 19, 22

*Northwinds Abatement, Inc. v. Emps. Ins. of Wausau*,
258 F.3d 345 (5th Cir. 2001) .............................................................. 37

*O'Mahony v. Whiston*,
206 N.Y.S.3d 541 (1st Dep't 2024) ...................................................... 36

*Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC,*
    497 F.3d 133 (2d Cir. 2007)..................................................................... 13, 30, 39

*P. R. Mar. Shipping Auth. v. Star Lines Ltd.,*
    454 F. Supp. 368 (S.D.N.Y. 1978) ................................................................. 23

*Rocket Jewelry Box Inc. v. Noble Gift Packaging, Inc.,*
    157 F.3d 174 (2d Cir. 1998)..................................................................... 19, 22

*Rohrmoos Venture v. UTSW DVA Healthcare, LLP*
    578 S.W.3d 469 (Tex. 2019)........................................................................ 37

*Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.,*
    No. 18-cv-2714, 2019 WL 1349527 (S.D.N.Y. Mar. 26, 2019)............... 25, 26, 27, 28, 31

*Tony Gullo Motors I, L.P. v. Chapa,*
    212 S.W.3d 299 (Tex. 2006)........................................................................ 38

*Tully Constr. Co./A.J. Pegno Const. Co., J.V. v. Canam Steel Corp.,*
    No. 13-cv-3037, 2015 WL 906128 (S.D.N.Y. Mar. 2, 2015)............................. 25, 28, 30

*Vernon-Hunt v. Guzman,*
    No. 20-cv-4755, 2021 WL 4950622 (S.D.N.Y. Oct. 25, 2021).................................. 31, 32

*Whittaker v. MHR Fund Mgmt. LLC,*
    No. 20-cv-7599, 2021 WL 9811715 (S.D.N.Y. Sept. 28, 2021) ...................................... 24

## Statutes

9 U.S.C. § 10................................................................... 1, 4, 13, 19, 24, 31, 32, 39

9 U.S.C. § 202................................................................................................. 4

9 U.S.C. § 203................................................................................................. 4

9 U.S.C. § 204................................................................................................. 5

28 U.S.C. § 1331............................................................................................... 4

28 U.S.C. § 1391............................................................................................... 5

Texas Civil Practice and Remedies Code § 38.001 ........................................................ 36, 37

## Other Authorities

ICC Rules of Arbitration, Article 31...................................................................... 17

ICC Rules of Arbitration, Article 32...................................................................... 25

ICC Rules of Arbitration, Article 36...................................................................... 11

ICC Rules of Arbitration, Article 39................................................................... 9, 17, 18

Jason Fry, Simon Greenberg & Francesca Mazza, *The Secretariat's Guide to ICC Arbitration*, Ch. 3 (2012).............................................................................................29

Petitioner Industria del Hierro, S.A. de C.V. ("Industria" or "Petitioner") submits this Petition to Vacate the Arbitration Award (the "Petition"), rendered in the arbitration between Industria and UOP LLC ("UOP") and Honeywell International, Inc. ("Honeywell") (collectively the "Parties"), pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10. In support of its Petition, Industria submits a Memorandum of Law and states as follows:

## PRELIMINARY STATEMENT

1.     Petitioner Industria brings this Petition to vacate an award rendered on May 21, 2025 (the "Award") in the arbitration captioned *Industria del Hierro, S.A. de C.V. (Mexico) v. Honeywell International, Inc. (U.S.A.) and UOP, LLC (U.S.A.)*, ICC Case No. 27020/PDP (the "Arbitration"), which was administered by the International Chamber of Commerce (the "ICC"), pursuant to its Rules (the "ICC Rules"). *See* Ex. 1, Award.[1] Industria brings this Petition because the Award is legally invalid, procedurally flawed, and fundamentally unjust. The Award, which is replete with sloppy factual and legal errors, disregards the plain terms of the operative arbitration agreement, violates due process, and condones UOP's breaches of contract by granting it an unjustified windfall of over $46 million, including a grotesque amount of attorney's fees and costs that is almost half of the overall Award.

2.     On May 13, 2022, Industria initiated an arbitration against UOP and Honeywell seeking redress for breaches of the Custom Equipment Purchase Agreement, which was entered into on June 5, 2019, effective as of June 1, 2019, and later modified by the Supplemental Terms (the "Agreement" or "CEPA"). *See* Ex. 2, Custom Equipment Purchase Agreement with Supplemental Terms; Ex. 5, Industria's Statement of Claim (March 10, 2023), ¶ 26. Under the

---

[1] References to exhibits in this Petition refer to the exhibits attached to the accompanying declaration of Chad V. Theriot.

Agreement, Industria fabricated and delivered seven modular pre-treatment trains designed to remove water, mercury, carbon dioxide, sulfur, and other components from natural gas. These modules would in turn be used for a liquefied natural gas ("LNG") export facility owned by Venture Global Calcasieu Pass, LLC ("Venture Global" or "VG") located in Cameron Parish, Louisiana.

3.      Despite Industria's full compliance with its contractual obligations, UOP and Honeywell's breaches led to a costly dispute that Industria sought to resolve in good faith through arbitration administered by the ICC, as set out by Section 29 of the Agreement (the "Arbitration Agreement"). Instead, the result was an Award that is legally indefensible and procedurally objectionable—quite frankly, a sloppy mess. The Tribunal's unprofessional conduct, apparent lack of experience with this kind of international dispute, and even lack of respect for the Parties' Agreement throughout the proceeding, demonstrates a blatant disregard for the Tribunal's obligations under the Arbitration Agreement, the Terms of Reference, the ICC Rules, New York law, the FAA, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"). The Award is the result of the Tribunal's own brand of justice, riddled with jurisdictional overreach, procedural violations, and inequitable treatment of the Parties.

4.      *First*, the Tribunal exceeded its powers by issuing the Award more than 11 months after the Arbitration proceeding concluded, in direct violation of the Parties' contractually agreed-upon deadline. The Parties expressly made the timely issuance of the Award a substantive jurisdictional requirement, which could only be modified with the express written agreement of the Parties. This was not merely a whimsical suggestion of time or even an ICC-suggested deadline like other cases; this was a mandated, contractually agreed time limit for issuance of the

Award. Yet, the Tribunal rendered the Award on May 21, 2025—seven months past the required deadline—without obtaining any affirmative waiver of the contractual limitation. By that time, the Tribunal's jurisdiction had lapsed without any express modification to the Agreement or the Terms of Reference, rendering the Award null and unenforceable.

5.    *Second*, the Tribunal exceeded its powers by failing to fully determine the issues submitted to the Arbitration in its purported "Final Award." Specifically, the Tribunal granted UOP over $16 million in damages contingent on the ***possible*** future adjudication of unripe claims between UOP and VG. This contingent award violated the finality requirements that mandate arbitration awards provide a definitive resolution to parties' submitted claims. Instead of resolving the dispute, the Tribunal created new uncertainty, leaving Industria's obligations dependent on future events entirely outside its control.

6.    *Third*, the Tribunal issued a grossly unreasoned Award in violation of the Arbitration Agreement, failing to explain the basis for its ruling on several key issues. Specifically, the Tribunal provided no justification for its unilateral decision to issue an untimely, invalid Award; to grant uncertain, contingent damages; and to impermissibly modify the seat of the Arbitration. Even more offensive, the Tribunal also failed to explain its decision that would justify granting UOP over $20.9 million in attorneys' fees and costs, which was based on an arbitrary and unexplained application of the "prevailing party" standard and lacked a transparent fee award analysis.

7.    *Finally*, the Tribunal engaged in misconduct and unfair treatment throughout the proceedings, resulting in significant prejudice to Industria. Specifically, the Tribunal allowed UOP's untimely claims and evidence in violation of the Terms of Reference and Industria's due process rights, engaged in selective and unequitable enforcement of procedural requirements, and

applied the wrong procedural law, resulting in a fundamentally unfair and disproportionate $20.9 million award in attorneys' fees and costs in favor of UOP.

8.      The Tribunal's actions not only exceeded its authority but also violated the fundamental principles of fairness and finality that underpin arbitration. The Award is legally defective, procedurally flawed, and substantively unjust. Allowing such a flawed and unfair Award to stand against a foreign entity that entered into US-based arbitration in good faith with the expectation of fairness and impartiality, would undermine confidence in the integrity of US arbitration proceedings. For all these reasons, and as more specifically set forth below, the Court should vacate the Award pursuant to 9 U.S.C. § 10.

## PARTIES

9.      Petitioner Industria del Hierro, S.A. de C.V ("Industria") is a corporation formed under the laws of Mexico with its principal place of business in Mexico City, Mexico.

10.     Respondent UOP LLC ("UOP") is a limited liability company incorporated under the laws of Delaware with its principal place of business in Des Plaines, Illinois.

11.     Respondent Honeywell International, Inc. ("Honeywell") is a Delaware corporation with its principal place of business in Charlotte, North Carolina.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 9 U.S.C. § 203. Specifically, 9 U.S.C. § 203 provides that "[t]he district courts of the United States . . . have original jurisdiction over" any "action or proceeding" falling under the New York Convention. This Award falls under the New York Convention because it arises out of an arbitration involving a foreign party. *See* 9 U.S.C. § 202.

13.     This Court has personal jurisdiction over UOP and Honeywell as the Parties consented to arbitrate the dispute in New York, New York. *Absolute Nev., LLC v. Grand Majestic*

*Riverboat Co., LLC*, 646 F. Supp. 3d 426, 439 (S.D.N.Y. 2022) ("An 'agreement to resolve disputes by arbitration in New York constitute[s] consent to personal jurisdiction in New York.'" (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos*, 553 F.2d 842, 844 (2d Cir. 1977))).

14.     Venue is proper in this Court under 9 U.S.C. § 204 because the Parties' Arbitration Agreement established New York, New York as the seat of the Arbitration.[2] *Gen. Re Life Corp. v. Am. Gen. Life Ins. Co.*, No. 24-cv-2089, 2024 WL 3043084, at *2 (S.D.N.Y. June 18, 2024) ("'A party who agrees to arbitrate in a particular jurisdiction consents not only to personal jurisdiction but also to venue of the courts within that jurisdiction.'" (quoting *Dr.'s Assocs., Inc. v. Stuart*, 85 F.3d 975, 983 (2d Cir. 1996))). Venue is also proper in this Court under 28 U.S.C. § 1391(b)(1) because UOP and Honeywell are residents of this district pursuant to 28 U.S.C. § 1391(c)(2). Furthermore, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as the seat of the Arbitration was located in this judicial district. Alternatively, venue is proper pursuant to 28 U.S.C. § 1391(b)(3) because UOP and Honeywell are subject to the Court's personal jurisdiction.

## **FACTUAL BACKGROUND**

### A. The Dispute

15.     UOP and Honeywell contracted with Industria to fabricate and deliver seven process modules to UOP for installation at the Venture Global LNG liquefaction and export facility located in Cameron Parish, Louisiana. *See* Ex. 2, CEPA, at 1; Ex. 4, Industria's Request for Arbitration (May 13, 2022), ¶ 3.4. Industria fulfilled its contractual obligations by fabricating,

---

[2] Despite the Tribunal's unwarranted and unlawful attempt to unilaterally change the juridical seat of the arbitration to Houston, Texas, the seat of the arbitration remained New York, New York, as expressly provided in the Arbitration Agreement.

delivering and having the modules inspected, accepted and integrated into a revenue-generating operation. *See* Ex. 5, Industria's Statement of Claim (March 10, 2023), ¶¶ 114–126; Ex. 14, Industria's Statement of Defense (September 29, 2023), ¶ 24. Nevertheless, due to a "bid bust" in their own contract with Venture Global, UOP and Honeywell withheld $23.8 million in payments owed to Industria under the Agreement. *See* Ex. 10, Industria's Post-Hearing Brief (June 14, 2024), ¶¶ 33, 165, 332; Ex. 33, Hearing Transcript, Day 10 (March 15, 2024), 109:19–115:7. Industria, in turn, brought an arbitration under the Arbitration Agreement against UOP and Honeywell,[3] that was to be administered by the ICC. *See* Ex. 2, CEPA, Section 29; Ex. 4, Industria's Request for Arbitration (May 13, 2022).

16.     The Arbitration centered on three interconnected issues: (1) whether Industria was entitled to the $23.8 million outstanding balance under the Agreement; (2) whether UOP could offset this amount based on alleged liquidated damages and back charges; and (3) whether the Parties had contractually extended the delivery schedules.

17.     Industria argued that UOP breached its fundamental payment obligations under the Agreement by withholding $23.8 million in earned contract balance and change order work, including by failing to pay $8.5 million in acceleration costs following the agreed-upon modified delivery schedules. *See* Ex. 4, Industria's Request for Arbitration (May 13, 2022), ¶¶ 4.2, 8.1. UOP counterclaimed seeking to recover over $63.2 million in damages based on unsubstantiated theories, including contingent back charges and liquidated damages, despite having inspected, accepted, and certified the modules without reservation. *See* Ex. 6, UOP's Statement of Claim (March 10, 2023), ¶ 36.

---

[3] In the Award, the Tribunal found it had no jurisdiction over Honeywell concluding that Industria's counterparty under the Agreement was UOP, not Honeywell. *See* Ex. 1, Award, ¶ 69.

18.    UOP's initial claims were riddled with inconsistencies. For example, UOP sought approximately $47.7 million in rectification and completion costs allegedly incurred at Venture Global's site, even though it presented no evidence linking these costs to Industria. *See* Ex. 6, UOP's Statement of Claim (March 10, 2023), ¶ 36. Notably, $35.9 million of this amount were contingent charges assessed by Venture Global against UOP, which UOP itself disputed and had not paid. *See* Ex. 6, UOP's Statement of Claim (March 10, 2023), ¶ 324; Ex. 15, Joint Quantum Expert Report (Preliminary) (December 23, 2023), at 2. Yet, UOP sought recovery of this amount from Industria. In addition, UOP demanded return of approximately $3.7 million in acceleration payments, claiming economic duress when agreeing to schedule modifications. *See* Ex. 6, UOP's Statement of Claim (March 10, 2023), ¶ 509. UOP's damage theories evolved throughout the proceedings, with supporting evidence being introduced well after established deadlines. *See* Ex. 16, Industria's Rejoinder Memorial (January 17, 2024), ¶¶ 426–430; Ex. 35, Industria's Opposition to Application to Admit Evidence (March 29, 2024); Ex. 10, Industria's Post-Hearing Brief (June 14, 2024), ¶¶ 414–422; Ex. 14, Industria's Statement of Defense (September 29, 2023), ¶¶ 695–696. These shifting positions demonstrated a pattern of procedural gamesmanship that ultimately eviscerated the integrity of the arbitration process.

## B.  The Arbitration

### 1.  Commencement of the Arbitration and Procedural Framework

19.    Industria initiated arbitration under the ICC Rules on May 13, 2022, with New York, New York as the contractually agreed juridical seat of the Arbitration. *See* Ex. 4, Industria's Request for Arbitration (May 13, 2022), ¶¶ 1.1, 5.5; Ex. 2, CEPA, Section 29.1.3(b)(i). The Tribunal was composed of three arbitrators: William K. Andrews of Andrews Myers, PC in Houston, Texas, as the Tribunal's president, and Matthew J. Sullivan of Dubois, Bryant &

Campbell, LLP in Austin, Texas (nominated by Industria), and Roger J. Peters of Belleair, Florida (nominated by UOP/Honeywell), as co-arbitrators. *See* Ex. 1, Award, ¶ 10.

20.     On December 12, 2022, the Tribunal issued the Terms of Reference, which were subsequently submitted to the ICC on February 2, 2023. *See* Ex. 1, Award, ¶ 27. The Terms of Reference affirmed and supplemented the procedural framework established in the Arbitration Agreement, including the scope of claims, applicable law (New York law), the contractually required timeliness of the Award, the seat of the Arbitration, and the applicable procedural timeline. *See* Ex. 3, Terms of Reference.

21.     The Parties filed their respective Statements of Claim on March 10, 2023. Industria sought $ 28.8 million consisting of: (1) $7.9 million of outstanding contract balance; (2) $5.3 million of approved Field Change Notices ("FCNs"); (3) $10.5 million of FCNs that Respondents wrongfully refused to approve; and (4) $1.4 million of taxes on surplus materials. Ex. 5, Industria's Statement of Claim (March 10, 2023), ¶ 2. UOP's counterclaims totaled over $63 million (later updated to $80 million), primarily based on contingent and unsubstantiated back charges. *See* Ex. 6, UOP's Statement of Claim (March 10, 2023), ¶ 36; Ex. 11, UOP's Post-Hearing Brief (June 14, 2024), at 138. Despite Industria's applications for summary dismissal of UOP's non-final, contingent claims, the Tribunal denied these requests without prejudice on February 5, 2024 and allowed UOP to proceed with these baseless and impermissible claims. *See* Ex. 7, Industria's Application for Summary Dismissal of Honeywell's Unliquidated and Unpaid Claims (January 22, 2024); Ex. 8, Order of Tribunal Regarding Industria's Applications for Summary Dismissal (February 5, 2024).

### 2.  The Arbitration Hearing

22.     The merits hearing was conducted over sixteen hearing days spanning four months in 2024: from February 26, 2024 to May 30, 2024. *See* Ex. 1, Award, at 9.

23.     Industria presented thirteen fact witnesses, including company executives, project managers, and site personnel, who testified regarding the project's technical and logistical challenges. *See id*. Industria also presented four expert witnesses specializing in construction, scheduling, and damages analysis. *See id*. On the other hand, UOP presented only three fact witnesses (all project personnel) and four expert witnesses. *See id*. In stark contrast to Industria's witnesses, none of UOP's witnesses had any knowledge of the back charge claims, raising significant doubts about the factual foundation relied upon by the Tribunal in rendering an alleged "reasoned award," as explained more fully below. *See* Ex. 10, Industria's Post-Hearing Brief (June 14, 2024), ¶¶ 8, 265–266; Ex. 36, Hearing Transcript, Day 9 (March 14, 2024), 155:11–13; Ex. 37, Hearing Transcript, Day 10 (March 15, 2024), 25:5–8; Ex. 14, Industria's Statement of Defense (September 29, 2023), ¶¶ 699, 724.

24.     Following closing arguments on May 30, 2024, the Tribunal requested additional briefing. *See* Ex. 9, Tribunal's Order on Post-Hearing Briefing Submissions (April 15, 2024). Both Parties filed simultaneous post-hearing briefs on June 14, 2024, along with their respective cost submissions. *See* Ex. 10, Industria's Post-Hearing Brief (June 14, 2024); Ex. 11, UOP's Post-Hearing Brief (June 14, 2024). On June 14, 2024, the Arbitration was deemed closed. *See* Ex. 1, Award, at 9; Ex. 9, Order of Tribunal on Post-Hearing Briefing Submissions (April 15, 2024).

### 3.  Award Timeliness Issues

25.     The Arbitration Agreement mandated that "the arbitrators shall, by majority vote, render a written award . . . ***within three (3) months after the last date after the conclusion of any hearing(s)***," unless extended by written agreement. Ex. 2, CEPA, Section 29.1.3(b)(ii) (emphasis added). The Terms of Reference further limited extensions to one month absent party consent, acknowledging that "the Court may extend the three month time limit by no more than one month pursuant to Article 39(2) of the ICC Rules." Ex. 3, Terms of Reference, ¶ 46.

9

26.     Despite these contractual requirements, the Tribunal, through the ICC, unilaterally extended the deadline for the Award four times without seeking or obtaining the Parties' consent. *See* Ex. 25, ICC Notification Letter (June 28, 2024); Ex. 26, ICC Notification Letter (November 27, 2024); Ex. 29, ICC Notification Letter (February 3, 2025); Ex. 30, ICC Notification Letter (April 1, 2025). The ICC's own communications revealed that it did not receive a draft Award from the Tribunal until January 6, 2025—six months after the proceedings were closed and two months beyond the contractual limit for issuing the Award—demonstrating the Tribunal's disregard for the Arbitration Agreement and even its own Terms of Reference. *See* Ex. 27, ICC Notification Letter (January 7, 2025). The Award was ultimately issued on **May 21, 2025**, over seven months after the contractual deadline. *See* Ex. 1, Award, at 262. The Parties received the Award from the ICC on May 27, 2025. *See* Ex. 31, ICC Notification Letter (May 27, 2025).

### C. The Tribunal's Award

27.     The Tribunal awarded UOP total damages of $34,508,881.79 before offsets, including $16,362,402 for contingent back charges—which UOP disputed and had not yet paid—as indemnification to UOP for alleged costs arising from correcting and completing Industria's work. *See* Ex. 1, Award, ¶¶ 971, 972, 974.b. Although UOP initially claimed $35.9 million in contingent back charges, during the hearing, UOP ultimately requested $48,976,991 in contingent back charges from Venture Global. *See* Ex. 6, UOP's Statement of Claim (March 10, 2023), ¶ 324; Ex. 15, Joint Quantum Expert Report (Preliminary) (December 23, 2023); Ex. 23, Hearing Transcript, Day 8, 133:1-8 (March 13, 2024). The Tribunal awarded $16,362,402 of these contingent, unpaid back charges. Ex. 1, Award, ¶¶ 905, 974.b. Nevertheless, even this reduced damages award could not form part of a "reasoned award" because it was based on speculative and unsupported claims, as UOP provided no evidence that Industria caused any of the alleged costs, UOP itself disputed that these alleged charges were owed to Venture Global and, in fact,

had not paid any of those disputed costs to Venture Global. *See* Ex. 6, UOP's Statement of Claim (March 10, 2023), ¶ 324; Ex. 15, Joint Quantum Expert Report (Preliminary) (December 23, 2023), at 2. The Tribunal also awarded UOP: (i) $4,874,561.35 in back charges for costs allegedly incurred by UOP due to Industria's performance, (ii) $10,287,762 in liquidated damages for alleged delayed delivery of the modules, ignoring the Parties' agreed extensions; and (iii) $1,900,000 in clawed-back acceleration payments. Ex. 1, Award, ¶ 970.

28.    Industria was awarded $9,402,190 in total damages, including: (i) $6,825,000 for payment milestones that Industria had satisfied; (ii) $2,381,190 for various items related to approved FCNs; and (iii) $196,000 for tax payments to the Mexican government made by Industria. *See* Ex. 1, Award, at 255–56. After offsetting Industria's awards against UOP's damages, the net award to UOP was $25,106,691.79 ($34,508,881.79 less $9,402,190). *See* Ex. 1, Award, ¶ 972. The Tribunal also awarded UOP interest at 9% per annum from June 24, 2022, until the Award's issuance on May 21, 2025. *See* Ex. 1, Award, ¶ 973. Notwithstanding the severely reduced overall recovery by UOP, the Tribunal determined that UOP was the "prevailing party" entitled to recover legal costs totaling $20,893,379. *See* Ex. 1, Award, ¶¶ 961–970. This amount included $13,783,186.84 in counsel fees, $5,371,097.58 in expert witness fees, and various other costs, further compounding the inexplicable and unreasoned nature of the Award. *See* Ex. 1, Award, ¶ 967.

### D. Correction and Review of the Award

29.    The Tribunal's Award was riddled with sloppy errors, prompting both Parties to submit Applications for Correction under Article 36 of the ICC Arbitration Rules, identifying numerous procedural, computational, clerical, and typographical errors. *See* Ex. 12, Industria's Application for Correction of the Award (June 18, 2025); Ex. 13, Respondents' Application for Correction of the Award (June 18, 2025). The Parties even agreed on many corrections, revealing

the scope of the Tribunal's mistakes and the shocking slovenliness of the Award. *First*, the Tribunal incorrectly stated that the seat of the Arbitration was Houston, Texas, despite the Arbitration Agreement and the Terms of Reference establishing that the seat of the Arbitration was New York, New York. *See* Ex. 1, Award, ¶ 15; Ex. 2, CEPA, Section 29.1.3(b)(i); Ex. 3, Terms of Reference, ¶ 38. The Tribunal's hubris to undermine the Parties' agreed-upon seat of the Arbitration constituted a serious procedural error affecting the Tribunal's procedural and substantive conclusions. *Second*, the Tribunal miscalculated the damages award by over $1.4 million across various damages categories, affecting core findings on total damages awarded and interest calculations.

30.     Despite the ICC's multi-layered review process, these substantial errors persisted through multiple drafts and scrutiny sessions. The ICC acknowledged receiving revised drafts that were allegedly reviewed by the International Court of Arbitration of the ICC, yet basic computational errors and the fundamental misstatement of the seat of the Arbitration remained uncorrected. *See e.g.* Ex. 28, ICC Notification Letter (January 31, 2025). Shockingly, during the Tribunal's deliberations on the still pending Applications for Correction, the Tribunal and the ICC once again unilaterally delayed the issuance of the modified Award without consulting or obtaining consent from the Parties. *See* Ex. 32, ICC Notification Letter (August 14, 2025).  In short, the Award's pervasive errors persist as of today. The Tribunal's fundamental disregard for the agreed-upon procedures and applicable law and its unequal treatment of the Parties demonstrate a lack of care that pervaded the entire proceeding and undermines confidence in the Tribunal's more substantive determinations. The Tribunal's sloppiness, lack of reasoning in the Award, and blatant disregard for the binding procedural framework warrant vacatur of the Award.

## MEMORANDUM OF LAW

Arbitration awards are not "impervious to judicial review." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007). Under the FAA, an arbitration award may be vacated under specific circumstances outlined in 9 U.S.C. § 10(a)(1)–(4). Such circumstances exist in this case for several reasons, as the Tribunal rendered its Award in violation of 9 U.S.C. § 10(a)(3) and 9 U.S.C. § 10(a)(4).

The Award should be vacated because the Tribunal exceeded its powers and engaged in fundamentally unfair conduct during the Arbitration causing prejudice to Industria. Specifically, the Award should be vacated on four grounds: (i) the Tribunal exceeded its powers in issuing an untimely Award in clear violation of the contractually jurisdictional three-month deadline (validly extended to four months), without the consent of Industria; (ii) the Tribunal exceeded its powers by issuing a contingent damages award, failing to fully determine the issues submitted and thus breaching finality requirements under the Arbitration Agreement; (iii) the Tribunal exceeded its powers by issuing an unreasoned award in violation of the Arbitration Agreement and the ICC Rules; and (iv) the Tribunal engaged in misconduct and unfair treatment, resulting in prejudice to Industria.

### A.  The Tribunal Exceeded Its Powers by Issuing an Untimely Award

Under the FAA, an award may be vacated if the arbitrators "exceeded their powers" by acting beyond the scope of the Arbitration Agreement or applicable legal framework. 9 U.S.C. § 10(a)(4). When considering whether to vacate an arbitration award, the Court must determine "'whether the arbitrator[s] acted within the scope of [their] authority,' or whether the arbitral award is merely the 'arbitrator[s'] own brand of justice.'" *Banco de Seguros del Estado v. Mut. Marine Off., Inc.*, 344 F.3d 255, 262 (2d Cir. 2003) (citation omitted); *see also Katz v. Feinberg*, 167 F. Supp. 2d 556, 566 (S.D.N.Y. 2001) ("[T]he scope of the arbitrators' authority 'depends on

13

the intention of the parties to an arbitration, and is determined by the agreement or submission.'" (quoting *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir.1987)), *aff'd,* 209 F.3d 95 (2d Cir. 2002).

In this case, the Tribunal exceeded its powers by issuing the Award more than seven months after the contractually agreed-upon time limit, in violation of the express terms of the Arbitration Agreement and the Terms of Reference, without the consent of Industria. The Tribunal's failure to comply with the agreed timeframe deprived it of jurisdiction, rendering the Award invalid and requiring that it be vacated.

### 1. The Tribunal's Untimely Award Violates the Jurisdictional Time Limit Set Forth in the Arbitration Agreement

The timely issuance of the Award was a jurisdictional condition under the Arbitration Agreement, and compliance with this condition was mandatory. The Second Circuit has held that "a belated award will be invalid if the parties' '***agreement itself*** makes the deadline [for filing the award] jurisdictional[.]'" *In Re Arb. No. AAA13-16109511085 Under Grain Arb. Rules*, 867 F.2d 130, 134 (2d Cir. 1989) (emphasis added) (citation omitted); *MSG Arena, LLC v. Int'l Bhd. of Elec. Workers, Loc. 3*, No. 18-cv-11626, 2019 WL 13246788, at *3 (S.D.N.Y. May 14, 2019) ("'[A] belated award will be invalid if the parties' agreement itself makes the deadline for filing the award jurisdictional.'") (citation omitted); *see also Jones v. St. Louis-S.F. Ry. Co.,* 728 F.2d 257, 265 (6th Cir. 1984) (reversing the lower court's decision to uphold an arbitration award because "the award was rendered so late that the [arbitrators] had lost jurisdiction over this matter"); *cf. Hasbro, Inc. v. Catalyst USA, Inc.*, 367 F.3d 689, 692 (7th Cir. 2004) (declining to vacate an arbitration award because "time was not of the essence under [the] arbitration agreement").

Here, the Parties' intention to make the deadline jurisdictional was crystal clear in the Arbitration Agreement and was reiterated in the Terms of Reference. The Arbitration Agreement explicitly required the Tribunal to issue a written Award within three months of the conclusion of the proceedings, unless the Parties agreed in writing to extend the deadline. Specifically, the Arbitration Agreement provided that "[u]nless the Parties agree in writing otherwise . . . the arbitrators *shall*, by majority vote, render a written award . . . within three (3) months after the last date after the conclusion of any hearing(s)." Ex. 2, CEPA, Section 29.1.3(b)(ii) (emphasis added). Only an award rendered "in accordance with" this term of the Arbitration Agreement "*shall* be final and binding on the Parties." Ex. 2, CEPA, Section 29.1.3(c) (emphasis added). Had the Parties intended the deadline to be aspirational rather than jurisdictional, or for the Tribunal and the ICC to have discretion to disregard it, which they did not, the Agreement would not have been so specific as to require an agreement in writing to modify the deadline. The language alone is conclusive.

The Parties reinforced—and the Tribunal agreed on—the jurisdictional nature of the deadline in the Terms of Reference, which serves as a further binding agreement among the Parties and the Tribunal on the timely issuance of the Award. Specifically, in acknowledgment of the time limits imposed by the Arbitration Agreement, the Terms of Reference included the Parties' further agreements to (i) "extend the three month time limit by *no more* than one month" and (ii) define the "conclusion of any hearing(s)" as "the later of the date of filing of Post-Hearing Submissions or the date of filing of Reply Post-Hearing Submissions." *See* Ex. 3, Terms of Reference, ¶¶ 44, 46 (emphasis added). Again, if the Tribunal was free to disregard the deadline at will, there would have been no reason to agree to a one-month extension in the Terms of Reference or to establish a definition for "conclusion of any hearing." Thus the Tribunal itself

agreed that the limits were jurisdictional and could only be further extended by an express agreement of the parties, which was never obtained by the Tribunal or the ICC.

Despite the Tribunal's own clear mandate to issue a timely award, the Award was not rendered until May 21, 2025, a staggering eleven months after the Parties submitted their post-hearing briefs on June 14, 2024 and a year after the last hearing date, on May 30, 2024. An Award rendered under these circumstances must be vacated due to the arbitrators arbitrarily exceeding their powers. *See Huntington Alloys, Inc. v. United Steelworkers of Am.*, 623 F.2d 335, 339 (4th Cir. 1980) ("[T]he limitations agreed to by the parties in regard to arbitration are to be given literal effect.  Here the parties agreed that an untimely decision would not be conclusive and binding. We see nothing improper in holding them to their agreement."); *cf. MSG Arena, LLC*, 2019 WL 13246788, at \*3 (declining to vacate an arbitration award on timeliness grounds because there was "no evidence" that the parties "agreed that an untimely Award would deprive the Arbitrator of jurisdiction."). The Award must be vacated in its entirety on this basis alone.

### 2. The ICC's Repeated Extensions of the Time Limit to Render the Award Were Irrelevant and, in Any Event, Unauthorized and Invalid

The ICC acknowledged the Parties' agreement regarding the timely issuance of the Award. In fact, shortly after the commencement of the Arbitration, on May 24, 2022, the ICC noted the time limits in the Arbitration Agreement and assured it would "do their utmost to ensure that the arbitral tribunal complies with the arbitration agreement." Ex. 24, ICC Notification Letter (May 24, 2022), at 4. Nevertheless, compliance with the Arbitration Agreement was not optional and the ICC's failure to "ensure that the arbitral tribunal complies" did not and could not modify the jurisdictional prerequisite. Simply put, the ICC alone, without express agreement of the Parties, did not have the authority to change these substantive deadlines. As the source of the Tribunal's authority, the express contractual terms of the Arbitration Agreement needed to be

strictly complied with and could not be disregarded or modified absent the Parties' written agreement.

In disregard of the Arbitration Agreement and the Terms of Reference, however, the ICC informed the Parties of its unilateral decision to extend the deadline of the Award's issuance *four* times. *First*, on June 28, 2024, the ICC informed the Parties it had extended the deadline to November 29, 2024 (***more than five months after the conclusion of the proceedings***). *See* Ex. 25, ICC Notification Letter (June 28, 2024*). Second*, on November 27, 2024, it notified the Parties that the deadline had been extended once again to January 31, 2025 (***more than seven months after the conclusion of the proceedings***). *See* Ex. 26, ICC Notification Letter (November 27, 2024). *Third*, on February 3, 2025, the ICC informed the Parties that it had once again extended the deadline to March 31, 2025 (***more than nine months after the conclusion of the proceedings***). *See* Ex. 29, ICC Notification Letter (February 3, 2025). *Finally*, on April 1, 2025, the ICC notified the Parties the deadline for rendering the Award would be May 30, 2025 (***more than eleven months after the conclusion of the proceedings***). *See* Ex. 30, ICC Notification Letter (April 1, 2025). The ICC did not receive a draft Award from the Tribunal until January 6, 2025. *See* Ex. 27, ICC Notification Letter (January 7, 2025). By that time, almost seven months had already passed.

At no point during the pendency of the Award's issuance, or the multiple extensions that were unilaterally granted to the Tribunal, did the ICC, or the Tribunal, request the Parties' written express consent, as required by the Arbitration Agreement. On the contrary, every time the ICC extended the deadline, it referred generally to Article 31 of the ICC Rules, which purportedly allowed it under general terms to extend the time limit "if it is necessary to do so." However, the ICC's own general rules are irrelevant. Article 31 merely permits the ICC to modify the default

time limit for an award under the ICC Rules. But Article 39(1) of the ICC Rules expressly allows the Parties to "agree to shorten the various time limits set out in the Rules."  Moreover, Article 39(1) provides that "[a]ny such agreement entered into subsequent to the constitution of an arbitral tribunal shall become effective only upon the approval of the arbitral tribunal," showing that a **pre-dispute** agreement to shorten a time period is mandatory and binding on the ICC and Tribunal. Here, the Parties had a pre-dispute agreement to shorten the time period for an award to three months after the conclusion of the hearing and to only permit modification with the written consent of all Parties, which only occurred once in the Terms of Reference for one additional month.

The fact is that Industria never provided its written consent to extend the deadline, which was an absolute requirement to lift the jurisdictional deadline. Neither the ICC nor the Tribunal ever even claimed there was such a written consent. In short, the ICC ignored the clear and binding mandate of the Arbitration Agreement, which defined the scope of the Tribunal's authority and explicitly required the Award to be rendered within a specific timeframe in order to be "final and binding on the Parties." *See* Ex. 2, CEPA, Section 29.1.3(c). By ignoring these contractual limitations, the ICC and the Tribunal acted beyond the authority granted to them under the Arbitration Agreement and the Terms of Reference. Thus, the Award must be vacated.

To the extent UOP might argue that Industria failed to object to these extensions, that is a red herring and ultimately irrelevant. The Parties' agreement to make the deadline jurisdictional is enforceable even in the absence of an objection prior to the issuance of the Award. *See Grinnell Hous. Dev. Fund Corp. v. Local 32B-32J, Serv. Emps. Int'l Union*, 767 F. Supp. 63, 67 (S.D.N.Y. 1991) ("[A]n arbitrator's failure to render an award on a timely basis does not invalidate the award absent an objection by or prejudice to the losing party, ***unless the agreement provides that the***

*timeliness of the decision is jurisdictional*.") (emphasis added) (citation omitted); *see also Hill v. Norfolk & W. Ry. Co*., 814 F.2d 1192, 1199 (7th Cir. 1987) ("***Unless the agreement itself makes the deadline jurisdictional***, a party's failure to complain about delay before the award is made forfeits his right to challenge the timeliness of the award.") (emphasis added) (citation omitted). And this standard and policy requiring express consent when the deadline is jurisdictional is for good reason. One can imagine the intimidation that can otherwise occur when a rogue Tribunal and a powerful institution like the ICC, simply inform a party that they are unilaterally extending an otherwise jurisdictional deadline without ever confirming expressly that all parties agree to such extension. That is exactly what was attempted here and why this Court must vacate the Award.

### B. The Tribunal Exceeded its Authority by Failing to Finally Determine the Issues Submitted to Arbitration

Not only was the Tribunal's Award jurisdictionally untimely, but it also acted outside its authority when it rendered a contingent damages award, failing to finally determine the issues submitted to arbitration as required by the Arbitration Agreement. Under the FAA, an award may be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). As the Second Circuit has held, under 9 U.S.C. § 10(a)(4), "lack of finality can support a decision to vacate an arbitration award." *Rocket Jewelry Box Inc. v. Noble Gift Packaging, Inc*., 157 F.3d 174, 175 (2d Cir. 1998). An award is considered final if it '"resolve[s] all issues submitted to arbitration, and determine[s] each issue fully so that no further litigation is necessary to finalize the obligations of the parties.'" *Id*. at 177 (citation omitted). The purpose of arbitration is to resolve disputes, not to create new ones. As the Second Circuit emphasized, "[a]n award which does not fulfill this purpose is unacceptable." *Bell Aerospace Co. Div. of Textron, Inc. v.*

*Local 516, Int'l. Union, United Auto., Aerospace & Agric. Implement Workers of Am. (UAW)*, 500 F.2d 921, 924 (2d Cir. 1974).

Here, the Tribunal violated the FAA and the express terms of the Arbitration Agreement by awarding $16,362,402 to UOP "contingent upon the outcome of the resolution of the Venture Global back charges by UOP." *See* Ex. 1, Award, ¶ 974.b. This contingent award failed to finally determine all issues submitted to arbitration, as required under both the FAA and the Arbitration Agreement. The designation of the Award as "Final" reflects the Parties' clear intent that there would be no subsequent stages or proceedings during which outstanding issues could be revisited or subsequently resolved.

### 1. The Arbitration Agreement Required the Final Determination of All Issues Submitted, Which the Tribunal Ignored

The Arbitration Agreement expressly required any dispute under the CEPA to be resolved through "final and binding arbitration" and provided that an award rendered in accordance with the Arbitration Agreement would be "final and binding on the Parties." Ex. 2, CEPA, Section 29.1.3(c). During the Arbitration hearing, the Parties reiterated their demand for a final award. For example, Industria's counsel stated: "We want finality." Ex. 21, Hearing Transcript, Day 14 (April 4, 2024), 20:18–20:24. The Tribunal itself also acknowledged the importance of issuing a final award, with Arbitrator Andrews stating: "I haven't learned much in 35 years as an arbitrator but I have learned there's a lot of merit in having a final award." *Id.* Additionally, the Tribunal explicitly labeled its decision as the "Final Award," underscoring its obligation to definitively resolve all issues submitted to arbitration. By its very designation, the Award was intended to represent the Tribunal's conclusive determination of the Parties' claims, leaving no material issues unresolved or contingent upon future events.

Despite this clear mandate, the Tribunal's "Final Award" failed to definitively determine all issues submitted to arbitration, once again ignoring the specific language of the Arbitration Agreement. Of the $25,106,691 in damages awarded to UOP, at most only $8,744,289 is arguably intended to be payable now. The remaining $16,362,402—representing 65% of the total damages—is contingent on the resolution of back charges between UOP and VG, a third party not involved in the Arbitration. *See* Ex. 1, Award, ¶ 974.b. In other words, 65% of the damages awarded to UOP is not "due to [be] paid by Industria at this time." *See* Ex. 1, Award, ¶ 974.b. Instead, Industria's liability is allegedly contingent on the outcome of a ***potential*** future adjudication or settlement between UOP and VG, leaving Industria's obligations unresolved and uncertain.

The Arbitration Agreement granted the Tribunal broad remedial powers, but it did not and could not have authorized the issuance of a contingent damages award. To the contrary, the Arbitration Agreement required a final Award that definitively resolved the Parties' claims without the need for further adjudication. The Tribunal's creation of a payment mechanism dependent on future events exceeds its authority and violates the express terms of the Arbitration Agreement, which "serves not only to define, but to circumscribe, the authority of arbitrators." *InterChem Asia 2000 PTE Ltd. v. Oceana Petrochemicals AG*, 373 F. Supp. 2d 340, 356 (S.D.N.Y. 2005). Remarkably, without citing any contractual or legal support, the Tribunal found "no impediment, under this contract or New York law to [the] contingent nature of one part of this Award." Ex. 1, Award, ¶ 904. The reality is, however, that those strict legal and contractual requirements for the issuance of an award do exist. The Arbitration Agreement, the FAA, and New York law required a final Award that definitively resolved the Parties' submitted claims.

### 2. The Contingent Award Violates the FAA's Finality Requirement

The Tribunal's contingent damages award creates precisely the type of speculative uncertainty that the FAA seeks to avoid. As the Second Circuit has explained, an arbitration award must resolve the Parties' claims "definitively enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication." *Rocket Jewelry Box*, 157 F.3d at 176 (emphasis omitted); *Norfolk S. Ry. Co. v. Sprint Commc'ns Co.*, 883 F.3d 417, 422 (4th Cir. 2018) ("An award is not 'final' under the FAA if it fails to resolve an issue presented by the parties to the arbitrators."); *Gas Aggregation Servs., Inc. v. Howard Avista Energy, LLC*, 319 F.3d 1060, 1069 (8th Cir. 2003) (vacating the award of prejudgment interest because "[b]y expressly leaving this award open for judicial determination, the panel failed to make a final determination"); *see also HDI Glob. SE v. Phillips 66 Co.*, No. 22-cv-807, 2022 WL 3700153, at *4 (S.D.N.Y. Aug. 26, 2022) ("The expectation of future proceedings is sufficient to show a lack of finality . . . ."). The Tribunal was required to treat the Award for what it was: a final award, not an interim or partial award pending further adjudication.

Here, the Tribunal's purported intent to issue what it labeled a "Final Award" contradicted its decision to issue a contingent damages award. The Tribunal's unauthorized decision to issue a contingent damages award is unequivocal, as it expressly referred to such damages as "unliquidated," "contingent," or "unmatured." *See* Ex. 1, Award, ¶ 683. In fact, the Tribunal expressly acknowledged the impossibility of determining quantum on the claim, stating: "That determination [of quantum to be paid] is contingent on payments made by UOP, UOP's settlement with VG, or the institution of dispute resolution proceedings between UOP and VG." Ex. 1, Award, ¶ 902. The Tribunal even "decline[d] to speculate on what will happen or what will be the outcome of any dispute between VG and UOP" and emphasized that "now is not the time to award recovery to UOP of the back charges established." Ex. 1, Award, ¶ 903. Despite this, the

Tribunal nevertheless awarded over $16 million in contingent damages, leaving Industria's liability dependent on future events entirely outside its control. This failure to resolve the claim definitively renders the Award incomplete and unenforceable under the FAA. *See La Vale Plaza, Inc. v. R. S. Noonan, Inc*., 378 F.2d 569, 573 (3d Cir. 1967) ("[A]n award must be final, complete, and coextensive with the terms of the submission. The arbitrator, through mistake, failed to consider and decide a part of the dispute submitted to him, and the award was invalid because incomplete."); *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 284 (2d Cir. 1986) (Feinberg, J., dissenting) ("Lack of finality is a statutory ground for vacating an arbitration award and for refusing confirmation; section 10(d) provides for vacation of an award that is not 'mutual, final, and definite.'") (emphasis and citation omitted).

The contingent damages award also violates Industria's due process rights by depriving it of the ability to challenge the back charges. The Tribunal acknowledged that Industria disputed the back charges as "unnecessary, unreasonable, and not its responsibility." Ex. 1, Award, ¶ 898. However, the Tribunal's contingent award allowed UOP to recover these charges based solely on its possible future dealings with VG, without any further review or input from Industria. This effectively denied Industria the opportunity to contest the reasonableness, necessity, or causation of the back charges, leaving its liability subject to unilateral determinations by UOP and VG. This is precisely why such "contingent awards" are prohibited because they are fundamentally unfair and deprive Industria of its due process rights. The Award's vague reference to adjusting liability based on the outcome of any action between VG and UOP, without a defined process, leaves Industria's obligation unclear and uncertain, rendering the Award incomplete and unenforceable. *P. R. Mar. Shipping Auth. v. Star Lines Ltd*., 454 F. Supp. 368, 372 (S.D.N.Y. 1978) ("[I]n order to be 'final' and 'definite,' the award must both resolve all the issues submitted to arbitration, and

determine each issue fully so that no further litigation is necessary to finalize the obligations of the parties under the award."); *Whittaker v. MHR Fund Mgmt. LLC*, No. 20-cv-7599, 2021 WL 9811715, at *8 (S.D.N.Y. Sept. 28, 2021) ("[A]n arbitrator's failure to dispose of the controversy submitted . . . renders an award not final and definite and thus subject to vacatur. . . ." (cleaned up) (quoting *Guetta v. Raxon Fabrics Corp.*, 510 N.Y.S.2d 576, 579 (1st Dep't, 1987))); *see also In re Andrews v. Cnty. of Rockland*, 992 N.Y.S.2d 131, 133 (2d Dep't, 2014) ("An award will be vacated as indefinite or nonfinal . . . 'if it leaves the parties unable to determine their rights and obligations, if it does not resolve the controversy submitted or if it creates a new controversy.'" (quoting *In re Westchester Cnty. Corr. Officers Benevolent Ass'n, Inc. v. Cheverko*, 978 N.Y.S.2d 58, 60 (2d Dep't, 2013))).

Rather than resolving the dispute, the Tribunal's contingent award creates a new controversy by leaving Industria's obligations uncertain, contrary to the express terms of the Arbitration Agreement, the Parties' repeated requests for finality, and the Tribunal's purported intention to issue a "Final Award." As the Second Circuit has stated, "[t]he purpose of arbitration is to resolve disputes, not to create new ones." *Bell Aerospace*, 500 F.2d at 924. The Tribunal's issuance of a contingent damages award violates the FAA, New York law, and the Arbitration Agreement. By failing to issue a definite and binding resolution of the Parties' submitted claims, the Tribunal exceeded its authority and deprived Industria of its due process rights. Accordingly, the Court should vacate the Award under 9 U.S.C. § 10(a)(4).

### C.  The Tribunal Exceeded Its Powers by Issuing an Unreasoned Award

The Tribunal also exceeded and imperfectly executed its powers by issuing an unreasoned award, in violation of the express terms of the Arbitration Agreement. Accordingly, the Court should vacate the Award pursuant to 9 U.S.C. § 10(a)(4). As this Court has held, "[i]n issuing an award in a form that does not comply with the arbitration agreement that is the source of the

arbitrator's power and authority, an arbitrator does in fact exceed the authority that was granted to him to resolve the parties' dispute." *Tully Const. Co./A.J. Pegno Const. Co., J.V. v. Canam Steel Corp.*, No. 13-cv-3037, 2015 WL 906128, at *18 (S.D.N.Y. Mar. 2, 2015). Although arbitrators are generally not required to provide reasons for their findings, where a "reasoned" award is required by the Arbitration Agreement, the award must "set[] forth the basic reasoning of the arbitral panel on the central issue or issues raised before it." *Leeward Constr. Co., Ltd. v. Am. Univ. of Antigua–College of Med.*, 826 F.3d 634, 640 (2d Cir. 2016).

In this case, the Arbitration Agreement required the Tribunal to "render a written award stating the reasons for their award." Ex. 2, CEPA, Section 29.1.3(b)(ii). The ICC rules, which the Parties expressly incorporated into the Arbitration Agreement, also required the Award to "state the reasons upon which it is based." ICC Rules, Article 32. Despite this clear mandate, the Tribunal once again ignored the Parties' contractual agreement and failed to provide a reasoned decision, leaving the basis for "central . . . issues raised before it" unexplained. *Leeward Constr. Co., Ltd.*, 826 F.3d at 640. Specifically, the Tribunal failed to explain its decision on: (i) the untimely issuance of the Award, in violation of the Arbitration Agreement, (ii) the issuance of a contingent damages award that fails to definitively determine all issues submitted to arbitration, (iii) its unilateral and impermissible modification of the seat of the Arbitration without the Parties' agreement, and (iv) the award of over $ 20.9 million in attorneys' fees and costs to UOP, based on an arbitrary application of the "prevailing party" standard. Thus, the Award should be vacated because "the arbitrator[s] exceeded [their] authority in issuing an award that does not meet the standard of a reasoned opinion." *Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.*, No. 18-cv-2714, 2019 WL 1349527, at *4 (S.D.N.Y. Mar. 26, 2019).

### 1.  The Tribunal Failed to Explain the Untimely Issuance of the Award

The Tribunal failed to provide any reason for its unilateral decision to issue an untimely Award, in blatant violation of the express terms of the Arbitration Agreement and the Terms of Reference. The Parties had expressly agreed to make the timely issuance of the Award a jurisdictional requirement, which could only be modified with the Parties' express written agreement. Thus, the Tribunal was required to provide "basic reasoning" for its jurisdictional overreach—an undoubtedly "central issue" in any arbitration. *Id.* at * 3.

Although the Tribunal briefly acknowledged the ICC's multiple extensions of the deadline and the "extensive" evidentiary record, it failed to address the mandatory nature of the time limit or its failure to seek and obtain the Parties' written consent to extend this deadline. *See* Ex. 1, Award, ¶¶ 53–54. As this Court has held, a reasoned award requires "something more than a line or two of unexplained conclusions[.]" *Smarter Tools Inc.*, 2019 WL 1349527, at * 3. In this case, the Tribunal did not even attempt to justify the Award's untimely issuance with "unexplained conclusions" as it provided no explanation whatsoever for its disregard of the agreed-upon jurisdictional requirement or how the Tribunal would even suggest that such an essential jurisdictional requirement of the Arbitration Agreement was allegedly overcome—which, of course, it was not. *Id.*

### 2.  The Tribunal Failed to Justify the Contingent Damages Award

The Tribunal also failed to provide a basis for its decision to issue a contingent damages award, disregarding its obligation to finally determine all issues submitted to arbitration. Specifically, the Tribunal upheld Industria's obligation to indemnify UOP for VG's back charges but deferred the determination of quantum to a later time, contingent on UOP and VG ***potentially*** resolving their dispute through settlement or other proceedings. While the Tribunal found "no impediment" to such speculative damages award, it did not justify its affirmative authority to

26

issue such impermissible award. *See* Ex. 1, Award, ¶ 904. This is precisely the type of "unexplained conclusion[]" that renders an arbitration award unreasoned, and subject it to vacatur. *Smarter Tools Inc.*, 2019 WL 1349527, at * 3.

Industria's indemnity obligations to UOP for VG's back charges resulting in $16 million of contingent damages—65% of UOP's total damages—was a central issue in the Arbitration. Thus, a "substantive discussion of the [Tribunal's] rationale" was required. *Hagshama Manhattan 10 Gold, LLC v. Strulovitz*, No. 20-cv-04839, 2021 WL 1178028, at *5 (S.D.N.Y. Mar. 28, 2021). Despite this requirement, the Tribunal issued a contingent damages award that leaves Industria's precise liability dependent on future events entirely outside its control, depriving Industria of the ability to challenge the reasonableness, necessity or causation of the back charges.

In fact, the Tribunal awarded over $16 million in contingent damages to UOP without UOP proving the existence of such damages or linking them to Industria's conduct, in blatant violation of New York law. *Kenford Co. v. Erie Cnty.*, 493 N.E.2d 234, 235 (N.Y. 1986) ("[T]he damages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes.") (citation omitted). The VG back charges were based on unauthenticated documents, including invoices of unknown etiology and "Plan History" documents apparently generated by one of VG's contractors. Ex. 14, Industria's Statement of Defense (September 29, 2023), ¶¶ 699–703; 724–726. No witness from VG or its contractor appeared to authenticate the Plan Histories or invoices or to establish a causal link between Industria's work and its alleged deficiencies. UOP's three fact witnesses—Brian Creighton, David Swedelius, and Gianfranco Ballarin—lacked any personal knowledge regarding the VG back charges. They were not present when the modules arrived in Louisiana, did not witness inspections performed by VG or its contractor, did not

observe deficiencies in Industria's work, and did not witness any of the work being back charged. *See* Ex. 10, Industria's Post-Hearing Brief (June 14, 2024), ¶ 266. Despite UOP's failure to support its damages claim, the Tribunal nevertheless awarded over $16 million in contingent damages rendering the Tribunals' Award wholly irrational and certainly unreasoned.

This lack of finality in the Tribunal's award of contingent damages undermines the very purpose of arbitration, which is to provide a definitive resolution of disputes. The Tribunal's failure to explain its authority to issue such an Award further highlights its departure from the Parties' Arbitration Agreement and the applicable governing legal framework.

### 3.    The Tribunal Failed to Justify Its Unilateral Decision to Attempt to Modify the Juridical Seat of the Arbitration

The Arbitration Agreement and Terms of Reference provide that the seat of the Arbitration is New York, New York. *See* Ex. 2, CEPA, Section 29.1.3(b)(i); Ex. 3, Terms of Reference, ¶ 38. The Arbitration Agreement explicitly provides that any modification to the seat of the Arbitration is only permissible upon the Parties' written agreement. Despite this clear requirement, the Tribunal unilaterally changed the seat of the Arbitration to Houston, Texas, in the absence of the Parties' required consent and providing no justification for its decision. *See* Ex. 1, Award, ¶ 15. Once again, the Tribunal disregarded "the parties' intentions with respect to the form of award" by failing to justify its "unexplained conclusions" on a central issue: the designation of the seat of the Arbitration. *Tully Constr. Co.*, 2015 WL 906128, at *19; *Smarter Tools Inc.*, 2019 WL 1349527, at * 3. As set forth below, the Tribunal's unilateral modification of the seat of the Arbitration had significant consequences, as it impacted the award of attorneys' fees.

The Parties never agreed to a modification of the seat of the Arbitration which remained, at all relevant times, New York, New York. The Parties only ever agreed to change the "location of the Merits Hearing," but an agreement to change an arbitration hearing's location by no means

changes the contractually agreed juridical seat of the arbitration. *See* Ex. 3, Terms of Reference, ¶¶ 38–39. As this Court has clarified, "[t]he location of the 'arbitral seat' is different from the location of the arbitration hearing: it is determined by the location in which the parties agreed to hold the arbitration and is unaffected by the arbitration hearing being held in a different city or virtually." *Citizens Bank, N.A. v. Magleby,* No. 24-cv-4827, 2025 WL 33430, at *2 (S.D.N.Y. Jan. 6, 2025) (citation omitted); *see also* Jason Fry, Simon Greenberg & Francesca Mazza, *The Secretariat's Guide to ICC Arbitration*, Ch. 3, at 131 (2012) ("The place of arbitration . . . must not be confused with the location(s) of hearings, meetings or the arbitral tribunal's deliberations.").

The Parties' express designation of the seat of the Arbitration is consequential, as the seat determines the procedural law governing the Arbitration proceeding. In this case, the Tribunal's disregard for the agreed-upon seat of the Arbitration had material consequences. Specifically, the Tribunal's apparent decision to apply Texas law—influenced by its unilateral and improper designation of Houston, Texas as the seat—directly impacted the Tribunal's determination of attorneys' fees. The Tribunal improperly applied Texas's liberal fee-shifting statute, resulting in the unreasoned and excessive award of $20.9 million in favor of UOP.

### 4. The Tribunal Failed to Provide a Reasoned Basis for the Award of Attorneys' Fees and Costs

The Tribunal awarded a remarkable $20.9 million in attorneys' fees and costs to UOP— nearly half of UOP's total damages and almost 70% of the immediately payable damages— without providing a transparent fee calculation or justification for its application of the "prevailing party" standard. While the Tribunal had the authority to award reasonable attorneys' fees, it was required to state the reasons for such an award and justify why it considered them reasonable. *See Hagshama Manhattan 10 Gold, LLC*, 2021 WL 1178028, at *5 ("The Second Circuit has held

29

that 'an arbitration award is a reasoned award when it contains a substantive discussion of the panel's rationale.'" (quoting *Leeward Constr. Co.*, 826 F.3d at 636)). Instead, the Tribunal left its award of attorneys' fees largely unexplained, making it impossible "to determine the reason or rationale for the arbitrator[s'] . . . damages determinations." *Tully Constr. Co.*, 2015 WL 906128, at *15.

The Tribunal determined that UOP was the "prevailing party" because it "largely prevailed on its claims and defenses" despite acknowledging that UOP was awarded "less than one half of the damages it sought in this arbitration." Ex. 1, Award, ¶¶ 966, 968. The Tribunal failed to provide an explanation or reasoning for its decision to ignore "the difference between the amount sought and the amount recovered as a basis for reducing UOP's recovery of its costs in the arbitration." *Id*. ¶ 966. Despite only awarding UOP $25 million of the requested $80 million in damages—$16 million of which were contingent on uncertain future events—the Tribunal concluded nevertheless that somehow (without reasoning) $20.9 million in legal fees and costs were "reasonable." Further, the Tribunal failed to consider that Industria was also awarded more than $9 million in damages, which offset UOP's recovery.  In the end, UOP would be awarded under this flawed Award almost $21 million in fees as the suggested "prevailing party" when it actually only net recovered around 30% of its requested damages—all without any apparent reasoning by the Tribunal.

Moreover, the Tribunal's decision was made without a transparent fee calculation analysis, which "handicaps [this Court's] ability to review the reasonableness of the . . . Award[.]" *Porzig*, 497 F.3d at 143. The Parties were initially required to submit their attorneys' fees requests *in camera*, such that Industria does not know how much UOP submitted as its total fees and cost. *See* Ex. 1, Award, ¶¶ 961–962. Thereafter, the Tribunal awarded UOP $20.9 million, without

disclosing if that was the entirety of what UOP had initially submitted or how that gross amount correlated to an Award that otherwise only granted UOP approximately a net 30% of its requested damages. The Tribunal failed to explain how it evaluated UOP's requested fees or why it found $20.9 million to be reasonable. This lack of transparency deprives Industria of the ability to assess or contest the Tribunal's decisions, obscures the Tribunal's rationale, and undermines this Court's meaningful judicial review.

The Tribunal's failure to explain its untimely issuance of the Award, its contingent damages ruling, its unilateral and impermissible modification of the seat of the Arbitration, and its attorneys' fees determination renders the Award incomplete and unenforceable under 9 U.S.C. § 10(a)(4), as the Tribunal "exceeded [its] authority in issuing an award that does not meet the standard of a reasoned opinion." *Smarter Tools Inc.*, 2019 WL 1349527, at *4.

### D. The Tribunal Engaged in Misconduct and Unfair Treatment Causing Prejudice to Industria

The Tribunal's conduct throughout the Arbitration reveals a systematic pattern of bias that fundamentally violated Industria's right to a fair arbitration, warranting vacatur under 9 U.S.C. § 10(a)(3). Under Section 10(a)(3), a federal court may vacate an arbitration award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." The Second Circuit has interpreted this provision to require a violation of "fundamental fairness." *In re Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997) ("Courts have interpreted section 10(a)(3) to mean that except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review."); *Vernon-Hunt v. Guzman,* No. 20-cv-4755, 2021 WL 4950622, at *3 (S.D.N.Y. Oct. 25, 2021) ("In short, for vacatur, the arbitrator's misconduct must

have made the procedure 'fundamentally unfair.'"). An arbitrator's misconduct violates "fundamental fairness" when such misconduct "denies a party sufficient opportunity to present proof of a claim or defense and renders the resulting arbitral decision biased, irrational, or arbitrary." *Dolan v. ARC Mech. Corp.*, No. 11-cv-09691, 2012 WL 4928908, at *3 (S.D.N.Y. Oct. 17, 2012) (citation omitted); *see also Vernon-Hunt*, 2021 WL 4950622, at *3 ("[V]acatur is appropriate if the party's 'right to be heard has been grossly and totally blocked.'") (citation omitted).

Here, the Award must be vacated due to a series of procedural violations that evidence the Tribunal's favoritism toward UOP and fundamentally prejudiced Industria's ability to defend against substantial damage claims. Specifically, the Tribunal (i) admitted UOP's untimely claims and evidence in violation of the agreed-upon Terms of Reference and Industria's due process rights; (ii) selectively and inequitably applied procedural rules, creating a two-tiered system of procedural justice to Industria's detriment; and (iii) applied the wrong procedural rules, resulting in a fundamentally unfair and disproportionate $20 million award in attorneys' fees and costs in favor of UOP. The Tribunal's conduct was not only fundamentally unfair, but it also resulted in significant prejudice to Industria. This is precisely the type of misconduct that 9 U.S.C. § 10(a)(3) was designed to remedy.

### 1. The Tribunal Impermissibly Admitted UOP's Untimely Claims and Evidence in Violation of Industria's Due Process Rights

The Terms of Reference explicitly prohibited the Parties from bringing new claims after February 2, 2023, absent the Tribunal's authorization. *See* Terms of Reference, ¶ 86. Despite this prohibition, the Tribunal permitted UOP to assert $8.3 million in entirely new claims in December 2023—nine months after the agreed-upon deadline. These claims were not minor modifications but entirely new allegations involving six Work Breakdown Structure codes never previously

attributed to Industria. These claims were "so new, in fact, there [was not] a VG invoice and/or supporting documents for these WBS in the record of the[] proceedings." *See* Ex. 16, Industria's Rejoinder Memorial (January 17, 2024), ¶¶ 427–428. Despite Industria's objection and UOP's failure to request authorization from the Tribunal, as required by the Terms of Reference, the Tribunal permitted UOP's late claims, diminishing Industria's ability to mount an adequate defense.

This prejudice was compounded when, on March 28, 2024, after all fact witnesses had testified and six weeks after the deadline for producing exhibits, the Tribunal allowed UOP to produce and admit into evidence 6,500 pages of late-submitted documents that Industria had never seen before to support UOP's $8.3 million claim. *See* Ex. 17, Hearing Transcript, Day 11 (April 1, 2024), 7:23–21:17; Ex. 34, Hearing Transcript, Day 12 (April 2, 2024), 298:23–299:4. These documents were UOP's sole support for the $8.3 million late-filed claims. Yet, Industria had no opportunity to cross-examine witnesses or present rebuttal evidence.

With all fact witnesses having testified, Industria suffered irreparable prejudice from the admission of 6,500 pages of documents supporting UOP's late-filed $8.3 million claim. This violation was particularly offensive because only Industria presented witnesses with direct, personal knowledge of the facts in dispute. By allowing these documents into evidence after the Parties' witnesses had testified, the Tribunal denied Industria its best means to address this evidence and continued a pattern of ignoring Industria's evidence in favor of uncritical acceptance of UOP's assertions.

UOP itself acknowledged the procedural violation, admitting that the documents had been "inadvertently omitted" and that this "mistake was not discovered until Tuesday, March 26, 2024." Ex. 18, UOP's Letter to the Tribunal (March 28, 2024), at 1. UOP also recognized the

33

prejudicial nature of its request by proposing to "leave open [its expert] Mr. Anderson's examination" to mitigate the prejudice. *Id*, at 2. However, Mr. Anderson, had no first-hand knowledge of the documents. Nevertheless, the Tribunal was unfazed and admitted these documents into evidence without providing Industria any meaningful remedy.

The Tribunal's misconduct fundamentally violated the Terms of Reference and Industria's due process rights. The resulting $16.3 million damages award for contingent claims—based on evidence Industria could not adequately challenge—demonstrates the substantive prejudice caused by the Tribunal's actions. Each decision by the Tribunal compounded this prejudice while rewarding UOP for violating established deadlines and procedures.

### 2. The Tribunal Selectively and Inequitably Applied Procedural Rules to Industria's Detriment

The Tribunal not only admitted UOP's untimely claims in violation of Industria's due process rights, but it also applied a double standard in its discriminate application of procedural rules. For example, on October 12, 2023, the Tribunal excluded Industria's Job Cost Report, finding that its production was "late" despite acknowledging that "UOP has suffered no harm or prejudice" from the delay. Ex. 19, Tribunal's Order on UOP's Application (October 12, 2023), at 4. The Tribunal's decision was particularly unfair given that Industria was not required to produce the complete Job Cost Report under prior discovery orders and had voluntarily provided it as an act of good faith.

Additionally, UOP itself had engaged in far more egregious late production practices without any objections from the Tribunal. For example, UOP produced 19,314 documents—76% of its total production—either at or after the August 15, 2023 discovery deadline. *See* Ex. 20, Industria's Response to Respondents' Letter (September 22, 2023), at 5. Yet, the Tribunal made

no finding that UOP's production was late or in breach of any procedural order and allowed all of these document into evidence.

The Tribunal's treatment of UOP's late production versus Industria's voluntary disclosure reveals a troubling double standard and further undermines the integrity of the proceeding. Whereas UOP was permitted to produce the vast majority of its documents after the deadline and enter those documents into evidence without consequence, Industria was formally criticized for providing additional information that exceeded its disclosure obligations and said documents were excluded from evidence.

As recognized in the Second Circuit, arbitral misconduct occurs when a Tribunal's actions deny a party "sufficient opportunity to present proof of a claim or defense." *Fairchild Corp. v. Alcoa, Inc.*, 510 F. Supp. 2d 280, 287 (S.D.N.Y. 2007). Here, Industria was systematically denied such opportunity through a series of compounding violations that ultimately resulted in an Award based on claims and evidence that could never be adequately challenged. Such conduct strikes at the heart of the arbitral process and cannot be permitted to stand.

### 3. The Tribunal's Misconduct in Applying Texas Procedural Law Resulted in an Unfair Award of Attorneys' Fees and Costs

The Tribunal's unilateral decision to modify the seat of the Arbitration—and, consequently, the procedural law (*lex arbitri*) governing the Arbitration—directly impacted the Tribunal's unreasonable and fundamentally unfair award of attorneys' fees and costs. Specifically, the arbitrators' improper application of Texas' liberal rules on attorneys' fees, rather than the agreed New York law, directly resulted in an inflated and grossly disproportionate award of over $20 million in legal fees and costs—nearly half of the net damages awarded to UOP. The Parties' intent to establish New York law as the procedural framework was unequivocal, as reflected in the Arbitration Agreement, the Terms of Reference, and the Parties' joint efforts to

correct the error post-Award. Despite this clear intent, the Tribunal improperly applied Texas law when awarding attorneys' fees to UOP as the alleged "prevailing party."

Although there is no true visibility into all the times the Tribunal applied the wrong procedure to guide its decisions, the evidence shows the Tribunal improperly applied Texas law to the award of attorneys' fees. In fact, the Tribunal president—a Texas attorney not barred in New York and lacking practical, prior ICC experience—expressly and explicitly referenced the Texas Civil Practice and Remedies Code § 38.001, which governs how Texas awards attorneys' fees, stating: "especially here in Texas because we love attorneys' fees recovery because we've got a statute that's very liberal." Ex. 22, Hearing Transcript, Day 14, 14:10–14:12 (April 4, 2024). Another arbitrator—also a Texas-barred attorney—echoed the President's intent to apply Texas's procedure when awarding attorneys' fees, confirming reliance on a "very liberal" Texas statute not available under New York law. *See id*. This contradicted the agreed New York seat.

New York and Texas courts assess the award of attorneys' fees in vastly different ways. Although both enforce contractual fee-shifting provisions, New York courts subject attorneys' fees to judicial scrutiny for reasonableness and proportionality. As established in *In re Freeman's Est.,* courts assess reasonableness using factors such as "the amount involved" and "results obtained," ensuring fees align with the litigation's scope and outcome. 34 N.Y.2d 1, 9 (1974). Similarly, in *O'Mahony v. Whiston*, 206 N.Y.S.3d 541 (1st Dep't 2024), a $1.8 million fee award was upheld as reasonable when compared to the $5 million recovery, demonstrating that proportionality supports confirmation of fees that reflect the value achieved.

However, New York courts are reluctant to award fees that significantly exceed or are disproportionate to the actual recovery, viewing such awards as potentially excessive or contrary to public policy. For instance, in *Briscoe Protective, LLC v. N. Fork Surgery Ctr., LLC*, the court

vacated an arbitration award that granted a $11,307 fee award—representing 50% of the $22,614 damages—as disproportionately high relative to the services rendered. 188 N.Y.S.3d 113 (2d Dep't 2023). Similarly, in *Lawrence v. Miller*, the court held that fees can be unenforceable "where the amount of the fee, combined with the large percentage of the recovery it represents, seems disproportionate to the value of the services rendered." 901 N.E.2d 1268, 1272 (N.Y. 2008) (citation omitted). While there is no per se rule against awarding fees in excess of damages recovered, New York courts consistently temper awards to avoid windfalls, particularly when fees dwarf the substantive relief.

In contrast, Texas courts adopt a more lenient approach, supplementing the award of attorneys' fees under contractual provisions with statutory recovery under Texas Civil Practice and Remedies Code § 38.001. This statute requires awards to be reasonable and necessary, ***with a presumption of reasonableness***—a presumption absent under New York law—rebuttable by evidence. Reasonableness is assessed via the lodestar method (reasonable hours times reasonable rate), adjustable based on factors such as "the amount involved and the results obtained," which incorporates proportionality but does not impose a strict test. *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). As clarified in *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, fees require specific evidence like contemporaneous billing records, and while proportionality is weighed, it is not dispositive. 578 S.W.3d 469 (Tex. 2019).

Unlike New York, where courts often reduce or vacate disproportionate fees as excessive or against public policy, Texas emphasizes a flexible approach without rigid limits. Lack of proportionality alone does not invalidate an award. In fact, Texas courts routinely uphold awards even where fees far exceed damages. For example, in *Northwinds Abatement, Inc. v. Emps. Ins. of Wausau*, the court upheld fees more than three times the trebled damages award and more than

nine times the actual damages, while affirming that "[s]uch disproportion alone does not render the award of attorneys' fees excessive." 258 F.3d 345, 354–55 (5th Cir. 2001); *see also Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299 (Tex. 2006) (focusing on segregation and evidence over strict ratios).

In short, Texas's lenient statutory framework allows fees to far exceed damages, unlike New York's stricter adherence to the American Rule, where disproportion frequently leads to reductions. Here, the Tribunal did not apply New York law; instead, it misapplied the "very liberal" rules of Texas, as explicitly acknowledged by the Tribunal: "because we love attorneys' fees recovery because we've got a statute that's very liberal." Ex. 22, Hearing Transcript, Day 14, 14:10–14:12 (April 4, 2024). New York does not have an attorneys' fee statute like Texas, and certainly not one that is "very liberal" with its application. Thus, it is no wonder this Tribunal awarded over $20 million in fees that dwarfed the actual damages, a grossly disproportionate award that would not have been upheld under New York law.

Relying on Texas's statutory provision, the Tribunal misapplied a "very liberal" approach, rather than one strictly guided by the Agreement and New York law, and awarded UOP an astounding $20.9 million in attorneys' fees. This $20.9 million in fees dwarfs the actual relief the Tribunal awarded UOP. This misapplication inflated the Award and deprived Industria of the procedural protections bargained for in the Arbitration Agreement. By substituting Texas law for New York law, and awarding a grossly disproportionate and unreasoned attorneys' fees award, the Tribunal engaged in procedural misconduct that prejudiced Industria's rights and undermined the fairness of the arbitration process. This error warrants vacating the fees portion of the Award, if not the entire Award, due to its material impact.

## **CONCLUSION**

Arbitral awards are not "impervious to judicial review" and must be vacated when faced with such a legally, contractually, and factually defective and unreasoned Award. *Porzig*, 497 F.3d at 139. This Tribunal:

    i.    Ignored the jurisdictional deadline for rendering the Award and unilaterally took over seven additional months to render a belated and no longer enforceable Award;

    ii.    Ignored the contractual and legal requirement that the Award finally determine all issues submitted and not hinge on future uncertain events;

    iii.    Ignored the contractual requirement that the Award be reasoned and thereby left the Parties and this Court with no ability to determine if the Award is actually founded in law, fact or otherwise reasonable;

    iv.    Created a two-tiered system of procedural justice in favor of UOP and to Industria's detriment; and

    v.    Ignored the stated juridical seat of the Arbitration and perhaps even the governing law in both the Arbitration Agreement and the Terms of Reference, tried to unilaterally change it from New York, New York to Houston, Texas, and left the Parties in the dark as to what procedural and substantive law it actually applied.

For all the foregoing reasons, Petitioner respectfully requests this Court to enter an order vacating the Award pursuant to 9 U.S.C. § 10. Petitioner further requests that this Court award any other relief that this Court, in the interests of justice, deems necessary and proper.

Dated:  August 18, 2025

Respectfully submitted,
*/s/ Daniel E. González*
Daniel E. González
HOGAN LOVELLS US LLP
600 Brickell Avenue Suite 2700
Miami, FL 33131
(305) 459-6500
daniel.gonzalez@hoganlovells.com

Samuel L. Zimmerman
Brett Weinstein
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3000
samuel.zimmerman@hoganlovells.com
brett.weinstein@hoganlovells.com

Brandon K. Black (*pro hac vice*
forthcoming)
JONES WALKER LLP
445 North Blvd, Ste 800
Baton Rouge, LA 70802
(225) 248-2128
bblack@joneswalker.com

Richard J. Tyler, FCIArb (*pro hac vice*
forthcoming)
JONES WALKER LLP
201 St. Charles Ave., 49th Floor
New Orleans, LA 70170-5100
(504) 582-8266
rtyler@joneswalker.com

Chad V. Theriot
JONES WALKER LLP
3455 Peachtree Rd. NE, Ste 1400
Atlanta, GA 30326
(404) 870-7515
ctheriot@joneswalker.com

*Counsel for Petitioner, Industria del Hierro, S.A. de
C.V*

40

## CERTIFICATE OF COMPLIANCE

I, Daniel E. González, an attorney duly admitted to practice before this Court, hereby certify pursuant to Local Civil Rule 7.1(c) that, according to the word-processing program used to prepare this Petition, the memorandum of law portion of this Petition contains 8612 words, and is thus is within the 8,750 word-count limitation provided in Local Civil Rule 7.1(c). I certify under the penalty of perjury the forgoing statements are true and correct. Executed on this 18th day of August, 2025.

*/s/ Daniel E. González*
Daniel E. González