UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INDUSTRIA DEL HIERRO, S.A. DE C.V.<br>Petitioner,<br><br>-against-<br><br>UOP LLC AND HONEYWELL INTERNATIONAL, INC.<br>Respondents. | 25-cv-06806-LAP<br><br>**OPINION & ORDER** |

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Petitioner Industria Del Hierro, S.A. de C.V.'s ("Petitioner") motion to vacate a May 21, 2025, arbitration award (the "Award") issued in favor of Respondents UOP LLC and Honeywell International, Inc. (collectively, "Respondents").[1] See First Petition. Respondents oppose the motion and cross-move to confirm the award. See Cross-Motion to Confirm. For the reasons stated below, Petitioner's Petition to Vacate is DENIED, and Respondents' Cross-Motion to confirm the Award is GRANTED.

[1] See Petition to Vacate Arbitration ("First Petition," Dkt. 1); Cross-Motion to Confirm Arbitration Award ("Cross-Motion to Confirm", Dkt. 29); Memorandum of Law in Support of Cross Motion to Confirm Arbitration Award ("Memo. Conf. Award," Dkt. 31); Response in Opposition to Cross-Motion to Confirm ("Resp. to Cross-Motion," Dkt. 50); Custom Equipment Purchase Agreement with Supplemental Terms ("CEPA", Dkt. 3-2); Final Terms of Reference ("TOR," Dkt. 3-3); Industria's Request for Arbitration ("Arb. Req.," Dkt. 3-4); Answer to Request for Arbitration and Counter-Claimants Counterclaims ("Arb. Req. Answer and Counter," Dkt. 30-4); Industria's Request for Summary Dismissal ("Pet. Req. Summary Dismissal," Dkt. 30-37); UOP's Opposition to Summary Dismissal ("Resp. Opp. Summary Dismissal," Dkt. 30-38); Tribunal Order on Applications for Summary Dismissal ("Trib. Order Summ. Diss.," Dkt. 30-39); Industria Application for Correction ("Pet. App. Correction," Dkt. 30-40); UOP Application for Correction ("Resp. App. Correction," Dkt. 30-41); Final Award ("Award"; Dkt. 3-1).

## I. Background[2]

In 2019, Venture Global Calcasieu Pass, LLC ("Venture Global" or "VG") contracted with Respondents to design and construct multiple gas-pretreatment modules for VG's new Liquified Natural Gas (LNG) facility in Louisiana. See Memo. Conf. Award at 11. Respondents, the designers of these complex machines, subsequently contracted with Petitioner to fabricate and assemble the modules at its factory in Mexico. Id. at 11. This contract, the Custom Equipment Purchase Agreement ("CEPA"), provided standards of fabrication, a proposed timeline for production, and liquidated damages in case of breach. CEPA at 4, 7, 8, 15.

After the CEPA was signed, the relationship between Petitioner and Respondents quickly went south. Respondents alleged the modules were delivered months after contractual milestones with technical and quality deficiencies that rendered the modules useless. Petitioner, in turn, claimed it fulfilled the requirements of the contract and Respondents were withholding

[2] "When reviewing a petition to confirm or vacate an arbitration award, the petition and accompanying record should be treated as akin to a motion for summary judgment based on the movant's submissions." Jiangxo Zhengao Recycled Textile Co. v. Amazon.com Servs. LLC, No. 24 CIV. 3434 (LGS), 2025 WL 834724, at *2 (S.D.N.Y. Mar. 14, 2025); accord City of New York v. Mickalis Pawn Shop, 645 F.3d 114, 116 (2d Cir. 2011). To that end, "the Court's decision is based on the record before it, specifically, [Petitioner's] petition to vacate, [Respondent's] cross-petition to confirm, the exhibits attached to those petitions and the parties' supporting declarations and exhibits thereto." Evan K. Halperin Revocable Living Tr. v. Charles Schwab & Co., No. 21-CV-8098 (PKC), 2022 WL 4334655, at *5 (S.D.N.Y. Sept. 19, 2022), aff'd, No. 22-2748-CV, 2023 WL 8253681 (2d Cir. Nov. 29, 2023)

payment for its adequately completed services. See First Petition at 13-14; Memo. Conf. Award at 11-12; Arb. Req. at 22-23.

Petitioner sought to resolve the dispute through arbitration administered by the International Chamber of Commerce's International Court of Arbitration ("ICC"), as set out in Section 29 of the Supplemental Terms of the CEPA. To that end, Petitioner initiated arbitration on May 13, 2022. Respondents answered the petition for arbitration and filed a counterclaim on June 24, 2022. The gravamen of Respondents' counterclaim is that Petitioner did not fulfill its contractual obligations by (1) failing to meet a mutually agreed upon production and delivery schedule and (2) delivering modules to Venture Global that presented significant technical and quality deficiencies. See Arb. Req. Answer and Counter at 34. Respondents sought compensation in the form of $41.6 million, in addition to legal fees and interest accrued. See id. at 36.

The arbitration, as set out in the CEPA, was directed by a Tribunal composed of three arbitrators selected by the parties and handled in accordance with ICC rules. Over the course of two years, these arbitrators considered over 16,500 exhibits, the live testimony of 24 witnesses, and over 3,000 pages of briefing. See Memo. Conf. Award at 8-9, 12. The arbitration concluded with a sixteen-day hearing spanning from February 26 to May 30, 2024.

See First Petition at 15 (citing Award at ¶ 9); Memo. Conf. Award at 12.[3]

On May 21, 2025, the Tribunal released the final Award. After finding in favor of the Respondents, the Tribunal ordered Petitioner to pay $25,106,691.79 in damages to Respondents, of which $16,362,402 are back-charges contingent upon a resolution between VG and Respondents. See Award at ¶ 974. In addition, the Tribunal also ordered Petitioner to pay interest and attorney fees. See id. Petitioner filed the present petition to vacate the award on August 18, 2025.

## II. Legal Standard

A district court is duty-bound to confirm an arbitration award unless the award is "vacated, modified, or corrected." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006). To that end, the Federal Arbitration Act ("FAA") outlines four grounds for vacating an arbitration award, two of which are relevant to the instant motions. Those grounds include:

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in

[3] On January 22, 2024, Petitioner moved for summary dismissal of Respondents' back-charge claims. See Pet. Req. Summary Dismissal at 3. These charges were incurred by Respondents from Venture Global, the owner/operator of the facility for which the modules were being supplied, and which Respondents seek to recover from Petitioner in their counterclaim. Id. at 4. Respondents promptly responded to the motion, stating the motion was untimely and that under New York law, Respondents were entitled to receive the costs of corrective and completion work, measured from the time of breach. See Resp. Opp. Summary Dismissal at 5-6, 18-19. The Tribunal denied Petitioner's motion. Trib. Order Summ. Diss. at 3.

> refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. §§ 10(a)(3)-(4) (emphases added). Courts in this District have vacated arbitration awards under § 10(a)(3) "only if the misconduct amounts to violation of fundamental fairness." Oracle Corp. v. Wilson, 276 F. Supp. 3d 22, 29 (S.D.N.Y. 2017) (quoting Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997). Fundamental fairness is violated when a party's "right to be heard has been grossly and totally blocked." Id. (quoting Stifel, Nicolaus & Co. v. Forster, No. 14 Civ. 6523, 2015 WL 509684, at *5 (S.D.N.Y. Feb. 6, 2015)). This is a demanding standard for a petitioner to satisfy, as arbitrators are not obligated to comport with the Federal Rules of Evidence or the Federal Rules of Civil Procedure. Id. at 30. Nor are arbitrators required to evaluate all the evidence before reaching a conclusion. Id.

As to § 10(a)(4), the Court considers (i) whether arbitrators ruled on an issue they had no authority to determine, or (ii) whether the arbitrators incompletely and indefinitely evaluated an issue submitted to them. See Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 219-20 (2d Cir. 2002). For an arbitrator to have authority to rule on an issue, the arbitrator must of course have contractual authority to do so. See IBAR Ltd. v. Am. Bureau

of Shipping, 92 Fed. Appx. 820, 822 (2d Cir. 2004). However, provided that an issue was properly within the arbitrator's mandate, a "federal district court does not sit as a court of appeals over an arbitration panel to correct errors of law." Barzelatto v. Spire Sec., LLC, No. 19 Civ. 6238, 2019 WL 8889865, at *8 (S.D.N.Y. Nov. 5, 2019). Put differently, courts cannot vacate an award because "the arbitrators 'got it wrong' from the perspective of the challenging party." DM Construtora de Obras Limitada v. Tupi B.V., No. 25-cv-7493, 2026 WL 1831400, at *9 (S.D.N.Y. Jun. 25, 2026). Accordingly, the crux of the Court's evaluation is limited to whether the arbitral panel evaluated the issues before it completely and if the panel did so with authority. Id. at *8; see also Rocket Jewelry Box, Inc. v. Noble Gift Packaging, 157 F.3d 174, 176 (2d Cir. 1998).

Finally, independent of the grounds set forth in § 10(a) of the FAA, courts may vacate awards if it is clear the arbitrators acted "in manifest disregard of the law." Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC, 497 F.3d 133, 139 (2d Cir. 2007); see also STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC, 648 F.3d 68, 78 (2d Cir. 2011) (observing that "manifest disregard" is an additional basis for vacating an award separate from grounds under § 10(a) of the FAA). The Court of Appeals has long recognized that vacatur for manifest disregard is warranted only in "exceedingly rare" instances where the arbitrator has demonstrated

"egregious impropriety." T.Co. Metals, LLC v. Dempsey Pipe & Supply Co., 592 F.3d 329, 339 (2d Cir. 2010) (quoting Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389 (2d Cir. 2003)). Deference to the arbitration panel is therefore essential to "facilitate the purpose underlying arbitration: to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation." T.Co. Metals, LLC, 592 F.3d at 342 (quoting ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co., 564 F.3d 81, 87 (2d Cir. 2009)); see also Kondor S.A. v. Duron LLC, 586 F. Supp. 3d 246, 262 (S.D.N.Y. 2022) (refusing to vacate an award in light of the "deference owed to the arbitrators' decision"); Flextronics Int'l, Ltd. v. Allianz Global Corp. & Specialty SE, 809 F. Supp. 3d 170, 188, 196 (S.D.N.Y. 2025) (declining to vacate where the arbitral panel reasonably applied the proper legal principles and the proceeding was not rendered "fundamentally unfair"). Ultimately, the scope for vacatur is "severely limited" and courts owe substantial deference to arbitrators' judgment. See Duferco, 333 F.3d at 389 (quoting Government of India v. Cargill Inc., 867 F.2d 130, 133 (2d Cir. 1989)).

Generally, the party moving to vacate bears the burden of demonstrating a valid ground for vacatur exists, see D.H. Blair, 462 F.3d at 110, and "the showing required to avoid confirmation is very high," id. (citing Willemijn Houdstermaatschappij, BV v.

Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997)). Indeed, arbitration awards must be enforced even "if there is a barely colorable justification for the outcome reached." T.Co. Metals, LLC, 592 F.3d at 339 (emphasis in original) (quoting Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85 (2d Cir. 2008); see also Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co., 57 F.4th 372, 383 (2d Cir. 2023) (where arbitrators justify their decision, or reasoning can be inferred from the record, there is no basis to vacate).

## III. Discussion

Petitioner offers four independent grounds to support vacatur of the award:[4] (1) the Tribunal exceeded its powers under § 10(a)(4) by issuing an untimely award; (2) the Tribunal exceeded its powers under § 10(a)(4) by failing to finalize the issues submitted to arbitration; (3) the Tribunal exceeded its powers under § 10(a)(4) by issuing an unreasoned award; and (4) the Tribunal engaged in misconduct sufficient to vacate the award under § 10(a)(3). On each issue, Petitioner fails to meet the high burden for vacatur

[4] The Court notes that Petitioner raises a multitude of perfunctory arguments that the Court need not need consider. See Tolbert v. Queens Coll., 242 F.3d 58, 75-76 (2d Cir. 2001). In addition, Petitioner improperly raises several arguments for the first time in its Reply, which the Court also need not consider. See Subway Int'l, B.V v. Subway Russ. Franchising Co., 735 F. Supp. 3d 332, 352 (S.D.N.Y. 2024). For example, Petitioner invites the court to "sever and partially vacate" the "impermissible portions" of the award. See Resp. to Cross-Motion at 35-36. Even if such arguments were not waived, Petitioner has still failed to carry its burden for partial vacatur for the reasons the Court has articulated.

outlined in the FAA. Consequently, this Court finds that the award should be confirmed.

**A. Timeliness of the Award**

Petitioner first argues that the Tribunal exceeded its powers by submitting the Award seven months after the contractual deadline. First Petition at 10. That argument fails, however, because the record shows that Petitioner did not object to the repeated delays. It is well-settled that courts should not accept an arbitration rule which encourages "post-award technical objections by a losing party as a means of avoiding an adverse arbitration decision." MSG Arena, LLC v. Int'l Bhd. of Elec. Workers, Loc. 3, 18-cv-11626, 2019 WL 13246788, at *3 (S.D.N.Y. May 14, 2019) (quoting West Rock Lodge No. 2120 v. Geometric Tool Co., 406 F.2d 284, 286 (2d Cir. 1968)). Accordingly, time limits on award rendering should be "a directory limitation, not a mandatory one, and that it should always be within a court's discretion to uphold a late award if no objection to the delay has been made." West Rock Lodge, 406 F.2d at 286 (emphasis added). The Court's discretion extends where there is no showing that "actual harm to the losing party was caused by the delay," id., consistent with the Court's general deference to arbitrators, see Cargill, 867 F.2d at 133.

Petitioner concedes that it did not object to these extensions during the arbitration. However, Petitioner claims its lack of

objection is "irrelevant" because the language in the CEPA required written consent from both parties to extend the deadline. See First Petition at 25. But the ICC Rules, which the CEPA explicitly states govern the arbitration, reiterate that an affirmative objection is nonetheless necessary.[5] Petitioner never objected throughout the arbitration. After remaining complacent throughout the arbitration process, Petitioner cannot be heard to raise those misgivings now.

Petitioner nonetheless argues that the timing language in the CEPA is "jurisdictional" language foreclosing the validity of any award submitted after that date. See First Petition at 22; see also CEPA at 29. Petitioner further argues that the CEPA's written request requirement for extensions also qualifies as jurisdictional language. See First Petition at 25. In Petitioner's theory, a violation of these provisions would exceed the jurisdiction of the tribunal, thus entitling Petitioner to vacatur notwithstanding the lack of objection.

Petitioner identifies no caselaw suggesting that such language in the CEPA would be jurisdictional, and the Court has located none in its independent research. On the contrary, the

---

[5] Indeed, Rule 40 of the 2021 ICC Rules expressly states that "[a] party which proceeds with the arbitration without raising its objection to a failure to comply with any provision of the Rules . . . shall be deemed to have waived its right to object." 2021 Arbitration Rules, ICC (Jan. 1, 2021), https://iccwbo.org/dispute-resolution/dispute resolutionservices/arbitration/rules-procedure/2021-arbitration-rules/. This requirement is reiterated in the Terms of Reference. See TOR at ¶ 55.

limited precedent that the Court has reviewed indicates that the CEPA lacks the express language required to make such language jurisdictional. See, e.g., Grinnell Hous. Dev. Fund Co. v. Loc. 32 B-32J, Serv. Emp. Int'l Union, AFL-CIO, 767 F. Supp. 63, 67 (S.D.N.Y. 1991) ("[A]n arbitrator's failure to render an award on a timely basis does not invalidate the award absent an objection by or prejudice to the losing party, unless the agreement provides that the timeliness of the decision is jurisdictional."); see also Hill v. Norfolk & W. Ry. Co., 814 F.2d 1192, 1199 (7th Cir. 1987) (a deadline in an arbitration agreement is jurisdictional only if the agreement itself so provides, especially when the agreement at issue contains no suggestion a late award would lack binding effect). This principle extends even where the agreement requires mutual consent to extend a deadline. See MSG Arena, LLC, 2019 WL 13246788, at *3 (confirming an award where the losing party neither objected to, nor was prejudiced by, the delay, despite lacking mutual consent to the final extension).

Finally, it bears noting that ICC Rule 31 expressly states that "[t]he Court may extend the time limit pursuant to a reasoned request from the arbitral tribunal or on its own initiative if it decides it is necessary to do so." 2021 Arbitration Rules, ICC (Jan. 1, 2021) https://iccwbo.org/dispute-resolution/dispute-resolution-services/arbitration/rules-procedure/2021-arbitration-rules/#block-accordion-31. The ICC here extended the

deadline for rendering the final award several times. See Award at ¶ 53. Thus, while Petitioner claims the ICC did so without authority, the ICC Rules clearly state the ICC may do so on its own initiative. Accordingly, the Court finds that Petitioner's so-called jurisdictional challenges are entirely without merit.

**B. Finality of the Award**

Petitioner also moves to vacate the Award on the ground that the Tribunal exceeded its powers by failing to issue a "final and definite" award. Petitioner notes that the Tribunal conditioned $16,362,402 of the damages award on the outcome of a separate, still-pending proceeding between Respondents and Venture Global. See First Petition at 26-27. The Court finds this argument equally unpersuasive. While one component of the Award is contingent on an underlying and connected matter, the Tribunal nonetheless ruled with finality on every issue the parties submitted to it.

To qualify as "final," an arbitration award must "resolve all the issues submitted to arbitration, and [] must resolve them definitively enough so that the rights and obligations of the two parties, with respect to the issues submitted, do not stand in need of further adjudication." Rocket Jewelry Box, Inc., 157 F.3d at 176 (emphasis added). The Court of Appeals has thus repeatedly observed that an award may be "final" even if it is contingent on a future award. See, e.g., Rabinowitz v. Kelman, 24-1389-cv, 2025

WL 842891, at *2 (2d Cir. Mar. 18, 2025) (summary order) (citing Rocket Jewelry Box, Inc., 157 F.3d at 177) (a subsequent award for attorney fees has no bearing on the finality of the initial final award between the parties); Offshore Expl. & Prod., LLC v. Morgan Stanley Priv. Bank, N.A., 626 Fed. Appx. 303, 307 (2d Cir. 2015) (summary order) (an unfinalized indemnity claim does not prevent an award from being final, since the arbitral panel has conclusively resolved the issues submitted for arbitration).

Petitioner also claims the $16 million was rendered contingent, and therefore indefinite, by tying the sum to a separate proceeding between Respondents and VG. The Award's text tells a different story. The issue presented to the Tribunal was whether New York law permits issuance of a "conditional judgment for indemnification" and how such a judgment would impact the finality of the award. Award at 239 ¶¶ 887-88. And the Tribunal came to a clear conclusion on this issue. The Tribunal found Respondents' $10.1 million claim against Petitioner for direct costs was not speculative, that VG had incurred these costs due to the modules' faulty conditions, that Respondents had not yet paid these costs, and that Respondents sought indemnification from Petitioner for them. See Award at 239-42. The Tribunal thus ordered "conditional contractual indemnification," finding "no impediment, under this contract or New York Law" to this part of the award. Id. at 241, ¶ 904.

Ultimately, while the exact amount of Respondents' loss will be determined in a separate process between Respondents and VG, the Tribunal fully resolved the issue the parties submitted to it: whether a conditional indemnification was permissible under New York law. In doing so, the Tribunal did not defeat the award's finality.

### C. Adequate Reasoning of the Award

Petitioner next argues the Tribunal issued an "unreasoned" award, in violation of the CEPA's requirements, as to four specific issues: the timing of the award, the contingent damages ruling, the reference to Houston as the seat of arbitration, and the award of legal fees and costs. See First Petition at 32; CEPA at 29; TOR at 9-14. None of these arguments withstand scrutiny.

An "arbitrator's rationale for an award need not be explained." D.H. Blair, 462 F.3d at 110. Reasoned awards are "something more than a line or two of unexplained conclusions, but something less than full findings of fact and conclusions of law on each issue raised." Leeward Constr. Co. v. Am. Univ. of Ant.-Coll. of Med., 826 F.3d 634, 640 (2d Cir. 2016). A reasoned award presents the "basic reasoning of the arbitral panel" on the issues before it. Id. Moreover, parties are free to contract around this default rule. See Tully Constr. Co./A.J. Pegno Constr. Co. v. Canam Steel Corp., No. 13-civ-3037, 2015 WL 906128, at *13 (S.D.N.Y. Mar. 2, 2015). Ultimately, a reasoned award mandates

more than a bare result but need not fully elaborate on the underlying findings of fact or conclusions of law. See, e.g., Carmody Bldg. Corp. v. Richter & Ratner Contracting Corp., No. 08 Civ. 9633, 2013 WL 4437213, at *3 (S.D.N.Y. Aug. 19, 2013) (upholding eight-page award setting out the history of the award and findings about each issue).

As a threshold matter, Petitioner never objected to the ICC's extensions during the proceeding, so there was no live dispute for the Tribunal to resolve or explain. And the reasoned-award requirement naturally extends only to issues "raised before" the panel. Leeward Constr. Co., 826 F.3d at 640.

As to the issues that were in fact raised by Petitioner, the Tribunal no doubt presented substantial reasoning that satisfies both the arbitral requirements and the Court of Appeals' precedent. For example, the Tribunal devoted substantial analysis to the question of contingent damages, see Award at ¶¶ 680-86, 887-905, and also dedicated multiple pages to the parties' submissions and settlement offers, the extent to which Respondents prevailed on the merits, and whether the fees and costs claimed by Respondents were "actually incurred" in assessing the appropriate award of attorney fees. See Award, ¶¶ 961-73. As a whole, the analysis set forth in the Award is more than sufficient under the "barely colorable" justification standard necessary to uphold it. T.Co. Metals, LLC, 592 F.3d at 339. While the Tribunal's explanations

may not have been favorable to Petitioner, they no doubt satisfy the "reasoned award" standard.[6]

**D. Alleged Arbitrator Misconduct under § 10(a)(3)**

Petitioner's final argument for vacatur, that the Tribunal's handling of certain procedural matters amounted to misconduct under § 10(a)(3) of the FAA, is equally meritless. See First Petition at 38.

Vacatur under § 10(a)(3) is reserved for the rare case in which an arbitral panel's conduct violates a party's right to "fundamental fairness." See Tempo Shain Corp., 120 F.3d at 20. Indeed, arbitrators are not bound by "all the niceties observed by the federal courts." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 107 (2d Cir. 2013) (quoting Bell Aerospace Co. v. Loc. 516, 500 F.2d 921, 923 (2d Cir. 1974)). Additionally, arbitrators have substantial discretion to "admit or exclude evidence." LJL 33rd St. Assocs., LLC v. Pitcairn Props. Inc., 725 F.3d 184, 195 (2d Cir. 2013). A party's harm from an exclusion is not necessarily "unfair" where the party itself could

[6] The Court finds meritless Petitioner's claim that the Tribunal's reference to Houston as the seat of arbitration in the Award was unreasoned. Both parties submitted applications to correct this reference under Article 36 of ICC Rules, which permits the Tribunal to correct "a clerical, computational or typographical error . . . provided such correction is submitted for approval to the Court within 30 days from notification of the award." 2021 Arbitration Rules, ICC (Jan. 1, 2021) https://iccwbo.org/dispute-resolution/dispute-resolution-services/arbitration/rules-procedure/2021-arbitration-rules/ - block-accordion-36. That both parties sought correction under this provision confirms they treated the reference to Houston as a typographical error, not an issue requiring substantive reasoning from the Tribunal.

have avoided the problem. Id. at 194 (exclusion of exhibits for hearsay could not be unfair if party could have cured the problem by calling the makers of the exhibits as witnesses). Because of this high threshold, a party claiming misconduct and vacatur on these grounds must show more than a debatable ruling; it must show the proceeding itself was rendered fundamentally unfair and emerged from bad faith or gross error. See Oracle Corp., 276 F. Supp. 3d at 29-30.

Petitioner argues that the Tribunal's decision to admit approximately 6,500 pages of invoices supporting a portion of Respondents' Venture Global back-charge claim deprived it of a meaningful opportunity to respond. See First Petition at 40-41. However, Petitioner cannot show the prejudice or misconduct that § 10(a)(3) requires. Certainly, § 10(a)(3) does not provide a basis for vacatur simply because an arbitrator admitted unfavorable evidence to one party.

Moreover, to the extent that Petitioner argues that the lack of opportunity to respond constitutes an exclusion of relevant evidence, that is not grounds for vacatur. See Rai v. Barclays Capital, Inc., 739 F. Supp. 2d 364, 371 (S.D.N.Y. 2010). While "an arbitrator must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments," the arbitrator is "not required to hear all the evidence proffered by a party." Id. at 371-72 (internal quotations omitted). The Award

makes clear the $16,362,402 in contingent back-charge damages the Tribunal ultimately awarded were not drawn from the disputed invoices but from the independent calculation of Petitioner's own quantum expert. See Award at 259. Where, as here, the challenged evidence played no role in the damages the panel actually awarded, there is equally no basis to conclude its admission made the procedure fundamentally unfair.[7]

Petitioner similarly contends that the Tribunal enforced a "double standard" when it excluded Petitioner's Job Cost Report while permitting Respondents to produce documents after the discovery deadline. See First Petition at 41–42. As mentioned above, arbitrators have ample discretion to exclude evidence. LJL 33rd St. Assocs., LLC, 725 F.3d at 195. Respondents noted to the Tribunal that Petitioner had repeatedly stated it would not rely on the Job Cost Report unless Respondents introduced it into the record. See Memo. Conf. Award at 39; Award at ¶ 936. After Respondents did not do so, Petitioner attempted to introduce the report following the close of pleadings. Id. Petitioner's petition does not at all address this record, let alone dispute it.

It is well-recognized that parties can stipulate to include or exclude evidence in an arbitration. Cf. Guyden v. Aetna, Inc.,

---

[7] Furthermore, Petitioner was given the opportunity to cross-examine witnesses about these invoices at a later date so Petitioner could have adequate time to prepare. See Memo. Conf. Award at 38.

544 F.3d 376, 386-87 (2d Cir. 2008) (where parties agree to a procedural process, a party cannot then retroactively disclaim it as inadequate). Upon such an agreement, and when no objections are raised, the right to challenge the merits is waived. See Aksman v. Greenwich Quantitative Rsch. LP, 563 F. Supp. 3d 139, 159 (S.D.N.Y. 2021) (citing Cook Indus., Inc. v. C. Itoh & Co. (Am.), 449 F.2d 106, 107-08 (2d Cir. 1971)). Having represented that it would not rely on the Jobs Cost Report unless Respondents introduced it, Petitioner cannot now reverse its position to vacate an unfavorable award.

Even accepting that the exclusion caused Petitioner some disadvantage—which Petitioner has not successfully demonstrated—that does not establish the fundamental unfairness required under § 10(a)(3), particularly where the disadvantage traces back to Petitioner's own delay in offering the Job Cost Report. See LJL 33rd St. Assocs., LLC, 725 F.3d at 194 (an exclusion of evidence cannot be considered unfair where a petitioner "could have cured the problem" themselves). Any harm to Petitioner from the exclusion of the report stems from its own decision to wait until after the discovery deadline to include the report as evidence. Ultimately, vacatur under § 10(a)(3) requires a showing that the arbitrators refused to hear evidence "pertinent and material to the controversy," which Petitioner has not shown here. See 9 U.S.C. § 10(a)(3).

Petitioner's final theory of misconduct is that the Tribunal secretly applied Texas law to its fee award, based on an offhand remark attributed to the Tribunal president at the April 4, 2024, hearing referencing Texas's "very liberal" fee statute. See First Petition at 43, 45. The Award, however, states the proper governing law without ambiguity. Award at ¶ 16 ("Under CEPA § 29, the agreement is governed by and construed in accordance with the laws of the State of New York."). The Tribunal's actual fee decision cites no Texas authority and applies no Texas legal standard. Id. at ¶¶ 961-70. A remark made in passing at a hearing does not substitute for the Tribunal's written reasoning, which contains no trace of the standard Petitioner claims was applied in secret. Because the relevant inquiry is what the Tribunal actually decided, Petitioner's theory cannot survive scrutiny of the Award's text.

## IV. Conclusion[8]

For the foregoing reasons, Petitioner's First Petition is DENIED, and Respondents' Cross-Motion confirming the May 2025 Award is GRANTED.

The Clerk of Court shall close all docket numbers, terminate this case, and enter judgment accordingly.

**SO ORDERED.**

Dated: New York, New York
September 30, 2026

______________________________
Loretta A. Preska
Senior United States District Judge

[8] The Court has considered Petitioner's remaining arguments and finds them to be without merit.